[14429. In Bank. — May 31, 1893.]

# KATIE E. DIXON, Respondent, *v.* WILLIAM J. F. W. PLUNS, Appellant.

New Trial — Misconduct of Jury — Chance Verdict. — A verdict of a jury'arrived at by dividing the sum of the various amounts at which each juror would fix the verdict by twelve, and taking the quotient as the verdict, the calculation being made in pursuance of a prior agreement that the result should be the verdict, without further consideration of the jury, and without a further determination that such amount formed a just and proper verdict, is a "chance" verdict, and should be set aside.

Statutory Construction — Re-enactment of Practice Act — Construction of Code. — The rules of statutory construction under the codes being different from those applied to the Practice Act, a re-enactment in one of the codes of a provision contained in the Practice Act does not carry with it the construction given it previous to its re-enactment. A re-enactment only carries with it the construction previously given where the rules of statutory construction are the same at the date of both enactments.

Negligence — Dropping of Chisel upon Person Using Sidewalk — Contributory Negligence. — A person injured by a chisel negligently falling from the hands of a workman, who is engaged with tools and materials directly over a sidewalk where people are constantly traveling, is not guilty of contributory negligence in walking upon the sidewalk.

Id. — Use of Tools over Thoroughfare — Measure of Care Required. — The law requires more than ordinary care from a person engaged with tools and materials directly over a thoroughfare where people are constantly traveling and have an undoubted right to travel. Such person must exercise the greatest care and caution in the performance of his work in order that travelers may not be injured.

Id. — Presumption of Negligence — Prima Facie Evidence — Nonsuit. — The dropping of a chisel upon a person walking on the sidewalk below raises a presumption of negligence upon the part of the person from whom it fell, and proof of it makes a *prima facie* case of negligence sufficient to prevent a nonsuit.

Id. — Accidents to Persons Using Thoroughfare — Evidence of Negligence. — Where a person is injured, while walking upon a public thoroughfare, by anything falling upon him which is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*H. C. Firebaugh,* for Appellant.

*Nagle & Nagle,* for Respondent.

Garoutte, J. — Respondent, while walking upon the sidewalk of Larkin Street, in the city of San Francisco, was struck

upon the head and quite seriously injured by a chisel that fell from a scaffolding above, upon which one of appellant's employees was standing while engaged in affixing a cornice to the building. Damages were recovered in the lower court, and the appeal is from the judgment and an order denying a new trial. This case was decided in Department, and the judgment and order reversed upon the ground that the verdict was arrived at by chance. The question involved being an important one, and there being some decisions of this court opposed to the doctrine there laid down, which had not been noticed in the opinion, the case was ordered to Bank for further consideration.

Appellant moved for a new trial upon the ground of misconduct of the jury in this, that they arrived at their verdict by a resort to the determination of chance. The code expressly provides that such misconduct may be shown by the affidavits of jurors (sec. 657, Code Civ. Proc.), and in support of the motion appellant presented the affidavit of one Koster, a juror, wherein he stated: "That upon retiring to the jury-room the twelve jurors first agreed by a vote that the average sense of the jurors should control in arriving at what the verdict should be, and then the twelve jurors agreed to be controlled by their vote, and voted that the said average sense of the jurors should be arrived at in the manner following, namely, by each individual juror writing on a piece of paper what he would fix the verdict at, and that the sums so written should then be added together, and the aggregate divided by twelve, and that the amount resulting should be taken as the average sense of the jurors, and be put in the verdict accordingly; and thereupon the said plan was carried out," etc. Courts have not been astute in perceiving sufficient error to set aside verdicts upon the ground here relied upon, and evidence sustaining the verdict has been generally favored; but upon this motion no opposing affidavits were offered, and the merits of the contention rest alone upon the sufficiency of the statement of facts above recited. Reduced to its lowest terms, the affidavit plainly discloses that the verdict was the result of a previous agreement, and was arrived at upon the basis that the amount of the verdict should be the quotient resulting from a division wherein twelve was the divisor, and the sum of the various amounts at which each

juror would fix the verdict, the dividend. The calculation was made in pursuance of a prior agreement that the result should be the verdict, and that result was adopted as the verdict, not upon further consideration of the jury and upon the determination that such amount formed a just and proper verdict, but it was adopted in pursuance of the prior "agreement." The decisions of our courts clearly indicate that they do not countenance such procedure, and the verdict must be set aside if the affidavits of jurors are entitled to be received as evidence to prove the agreement and the consummation thereof, and that matter is dependent upon the solution of the question : Is the verdict a chance verdict, within the meaning of the statute?

Counsel for respondent, with good reason, rely upon *Turner* v. *Tuolumne County Water Co.*, 25 Cal. 397, to support his contention in this regard. It is there decided that a verdict arrived at in the manner hereinbefore set forth is not a chance verdict, and therefore cannot be attacked by the affidavits of jurors. But after mature consideration, we think the principle there declared erroneous, and that the establishment of a contrary rule, in this country especially, where the rights of property, reputation, and life are all taken into the jury-room and there passed upon by jurors, will result in a purer and more satisfactory administration of justice. In the case cited, Mr. Justice Sanderson used the following language : "To ascertain this average the jury may properly adopt the method which was used in the present case, but they ought not to agree to be bound by the result, whatever it may be. If they do so agree, and such result is made the verdict without further consideration or assent, such verdict is vicious and irregular, and must be set aside whenever the fact is made to appear by proper and competent evidence." If this character of verdict is vicious and irregular, it can only be vicious and irregular upon the ground that it was not the result of that calm and deliberate judgment of jurors contemplated by the law, but that it was arrived at by a resort to chance or lot. The vicious character of the verdict can consist of nothing else. The jurors have not been corrupted. They have acted under no duress, mistake, or fraud. Their verdict is the result of free and voluntary action. Outsiders have not participated in or influenced their determinations. Hence,

the verdict is vicious only in this, that the amount was deter‐ mined by a resort to methods condemned by the law. In the few cases relied upon to support *Turner* v. *Tuolumne County Water Co.*, it will be noticed that the verdicts were upheld upon the ground that after the computations were made and the result obtained, that result was not adopted as the verdict of the jury in pursuance of the prior agreement, but independently thereof, and upon further deliberation and thought, and as to such a course we see no serious objection.

"Chance" may be defined to be hazard, risk, or the result or issue of uncertain and unknown conditions or forces, and the facts here developed bring the case clearly within such defini‐ tion. In the present case each juror agreed that a definite amount should be the verdict of the jury, at a time when he had no knowledge whatever as to what the amount should be, for it had not yet been computed. No person even knew the figures upon which the computation would be made. If the estimate of each juror is before the eyes of the others when the agreement is made, then no element of chance will be found in the result, for it would be a mere matter of mathematical computation; but without a knowledge of these estimates, the character of the verdict will be as entirely unknown to the jurors as though the whole matter were decided by the casting of a die, or the tossing of a coin. In the casting of a die, or the tossing of a coin, justice has an equal chance with injus‐ tice, but under the system here considered, one unscrupulous and cunning juror always has the power to defeat justice by increasing or decreasing the amount of the verdict in proportion as he places his estimate at an unconscionably high or low figure. In the casting of a die the chance of winning or losing is dependent upon the face of the die that presents itself after the cast. In arriving at a verdict in the manner here practiced, the chance of the respective parties, plaintiff and defendant, to secure the verdict is entirely dependent upon the sum total of the estimates made by the various jurors, and that sum total is as uncertain and unknown to the jurors at the time the agree‐ ment is made as the result of the cast is unknown to the gamester. We are clearly of the opinion that this verdict was obtained by a resort to chance, and *Turner* v. *Tuolumne County*

*Water Co.*, and other cases following in its wake, are no longer valuable as authority.

Under a statute similar to the provision of our code, this question has been directly adjudicated, and the position here taken supported in the recent case of *Pawnee Ditch & Improvement Co.* v. *Adams*, 28 Pac. Rep. (Colo.) 662. Under the same provision of the Idaho statute this question has been carefully considered in the very late case of *Flood* v. *McClure,* 32 Pac. Rep. (Idaho) 254. *Turner* v. *Tuolumne County Water Co.* is there reviewed, and its reasoning declared not sound.

It is insisted that the case of *Turner* v. *Tuolumne County Water Co.* having been decided under the former practice act, and the same provision being carried into the Code of Civil Procedure, that re-enactment carried with it the construction previously given the provision. Such can only be the law where the rules of statutory construction are the same at the date of both enactments. This principle is declared in *Blythe* v. *Ayres*, 96 Cal. 591, and also in *Flood* v. *McClure*, 32 Pac. Rep. (Idaho) 254.

As the cause must be returned to the lower court for further proceedings, we pass to an examination of some additional matters. The motion for a nonsuit was properly denied. Upon the evidence we cannot say that the respondent was guilty of contributory negligence in walking upon the sidewalk at the time the injury was inflicted. She had a right to be there, and had no sufficient reason to anticipate danger from overhead. Respondent's evidence also established a *prima facie* case of negligence upon the part of the appellant. He was engaged with tools and materials directly over a thoroughfare where people were constantly traveling and had an undoubted right to travel. Under such circumstances the law demanded of him more than ordinary care. He was called upon to exercise the greatest care and caution in the performance of his work in order that travelers might not be injured. The injury was received at the hands of appellant by the dropping of the chisel while respondent was walking upon the public street. Under the foregoing circumstances the court was justified in submitting the case to the jury. This question is carefully considered and the authorities reviewed in *Mullen* v. *St. John*, 57

N. Y. 567; 15 Am. Rep. 530.   In that case the wall of a build-
ing fell upon a traveler in the street.   The court held that the
presumption of negligence arose from the fact of the building
falling.   In *Lyons* v. *Rosenthal*, 11 Hun, 46, the injury arose
from the falling of a box of goods from the story above, and it
was held that negligence would be presumed.   In support of
this doctrine the court cited various English authorities which
upon the facts stand upon common ground with the case at bar.
(See *Kearney* v. *Railroad Co.*, Law R. 5 Q. B. 411; *Byrne* v.
*Boadle*, 2 Hurl. & C. 722; *Scott* v. *Dock Co.*, 3 Hurl. & C.
596.)   The rule recognized by the foregoing authorities as per-
taining to this class of accidents is where the thing is shown to
be under the management of the defendant or his servants, and
the accident is such as in the ordinary course of things does
not happen if those who have the management use proper care;
it affords reasonable evidence, in the absence of explanation
by the defendant, that the accident arose from want of care.
(Shearman & Redfield on Negligence, sec. 60.)

Inasmuch as counsel for respondent at the oral argument
stated that he relied upon previous decisions of this court to the
effect that affidavits of jurors would not be received to impeach
a verdict arrived at in the manner set out in the affidavit of the
juror in this case, and for that reason did not offer counter-
affidavits upon the hearing of the motion for a new trial, which
he could have done, it is ordered that the order denying a new
trial be reversed, and the same remanded to the court below for
further action as herein indicated; that the court below permit
the respondent, if she shall be so advised, to file within twenty
days after the filing of the remittitur counter-affidavits as to the
manner in which the jurors arrived at their verdict, and that
thereupon, upon such affidavits and the other matters already
before it upon the motion for a new trial, the court render its
decision thereon.   It is further ordered that the order heretofore
made in this court submitting her appeal from the judgment be
set aside, and that the hearing upon the said appeal be continued
to a day to be hereafter fixed upon the motion of either party
hereto.

McFARLAND, J., HARRISON, J., PATERSON, J., DE HAVEN,
J., and BEATTY, C. J, concurred.