## WEINBURG v. SOMPS.

### No. 14,748; June 9, 1893.

33 Pac. 341.

**Trial.—The Mere Failure to Instruct the Jury** on a point can-not be assigned as a refusal so to·do, where there was no request for such instruction.

**Trial.—Where a Witness is Called in Rebuttal,** and then fully cross-examined as to a matter to which an objection was sustained when witness was first called, the error, if any, in sustaining the objection, is cured.

**New Trial.—The Application for a New Trial** because of the newly discovered evidence of three witnesses showed that the materiality of their testimony appeared from the testimony of plaintiff, who testified in the morning of the first day of the trial, and that the trial closed at 1:30 on the second day; that a messenger was sent for one of the witnesses on the morning of the second day, but witness was away from home. No subpoena was issued for any of these witnesses, and no application was made for time to procure the attendance. Held, that the application failed to show reasonable diligence.

**Trial—Chance Verdict.—Where the Jury Agree** that each shall write out the sum he thinks plaintiff is entitled to recover, and then divide the aggregate of such sums by twelve, and that the quotient shall be the amount of the verdict, such verdict is determined by chance, within the meaning of Code of Civil Procedure, section 657, subdivision 2, providing that such misconduct of the jury may be shown by the affidavit of any of the jurors.[1]

APPEAL from Superior Court, City and County of San Francisco; Walter H. Levy, Judge.

Action for malicious prosecution by Moritz Weinburg against P. G. Somps. Plaintiff had judgment, and from an order denying a new trial, defendant appeals. Reversed.

Gordon & Young for appellant; J. G. Maguire and H. K. McJunkin for respondent.

[1] Cited and followed in Rockwell v. Italian-Swiss Colony, 10 Cal. App. 637, 103 Pac. 164, where it is shown that the right, under the statute, to have a new trial ordered on the ground of newly discovered evidence does not accrue to one who, by the exercise of reasonable diligence, could have produced the evidence at the trial.

VANCLIEF, C.—Action for malicious prosecution of the plaintiff on a charge of having bought and received stolen property, for which he was tried in the police court and discharged. The jury returned a verdict for plaintiff, assessing his damages at $3,333, for which sum judgment was rendered. The defendant brings this appeal from an order denying his motion for a new trial.

1. Counsel for appellant contend that the court erred in its instruction to the jury as to what constitutes probable cause for the criminal prosecution complained of. The exception upon which this point rests was taken at the close of the instructions given, and was in the following language: "I desire to except . . . . to your instruction to the jury as to what constitutes probable cause, and your refusal to instruct the jury that it is for the court to determine what probable cause is, and not for the jury." Waiving the indefiniteness of the exception, it is a sufficient answer to this point that the court did instruct the jury as to what would constitute probable cause substantially as requested by defendant's counsel, and very nearly in the same language. Besides, the court was not requested to instruct that it was for the court, and not the jury, to determine what is probable cause; and consequently did not refuse so to instruct.

2. It is claimed that the evidence does not justify the finding of malice on the part of the defendant in causing plaintiff to be arrested, for the reason that the defendant acted on the advice of a police officer. But the evidence tends to prove that defendant did not state to that officer all the material facts within his knowledge bearing upon the question of malice, and that the officer did not know all such facts. It is, therefore, unnecessary to decide whether the advice. of the police officer would have shielded the defendant from the charge of malice under any circumstances.

3. It is claimed that the court erred in sustaining an objection to a question asked plaintiff by defendant's counsel on cross-examination. But afterward, when the plaintiff was called in rebuttal, he was fully examined by defendant's counsel as to the same matter in relation to which the objection had been sustained. This cured the alleged error, if it was error.

4. One of the grounds for a new trial was that of newly discovered evidence, viz., the testimony of three witnesses, all residents of the city of San Francisco (the place of trial), whose testimony, as appears by their affidavits, will contradict a part of the testimony of the plaintiff on his own behalf as to special damages to his business. The proposed new testimony contradicts very little of the material testimony of the plaintiff, and probably would not have effected a change of the verdict. But, however this may be, I think it is not made to appear that defendant could not, with reasonable diligence, have discovered and produced at the trial the alleged new evidence. It appears that the trial was commenced on the morning of March 24th, and closed the next day about 1:30 P. M.; that plaintiff was the first witness examined, and that he gave the testimony sought to be contradicted before noon of the first day of the trial; that such testimony of the plaintiff related solely to his relations, dealings, and conversations with the newly discovered witnesses—Hartzman, Lachman, and Kuhn—who must have known, and very probably remembered, whether plaintiff's testimony as to his relations, dealings, and conversations with them was true or false; that, after the adjournment of the court on March 24th, defendant was advised by his attorney to find out from Hartzman whether plaintiff's statements were true or false. Thereupon defendant instructed one of his employees, Morris Lewin, to find Hartzman, and make inquiries as to the truth of plaintiff's testimony. The affidavit of Lewin states that he was instructed to find Hartzman in the afternoon of March 24th; that about 8 o'clock next morning he found the residence of Hartzman, and then learned that he had gone to Alameda on business, and was not expected to return before evening of that day; that he waited around Hartzman's house several hours, hoping that he might return sooner than expected, but he did not; that he then returned to the courtroom about noon, when he learned that the evidence in the case was closed. He does not state that he had any difficulty in finding Hartzman's house, or that he tried to find it before the morning of March 25th. It does not appear that any effort was made to find either of the other two witnesses Lachman and Kuhn until some four or five days after the trial. No subpoena was issued for any of these witnesses, and no application was

made to the court for time to procure their attendance. Do
the affidavits of defendant and Lewin show that the new evi-
dence could not, with reasonable diligence, have been dis-
covered before the close of the trial? I think they do not,
since they fail to prove due diligence. That defendant did
not know what the new witness would testify is no excuse.
He had been notified by plaintiff's testimony that these wit-
nesses knew the truth of the matters as to which plaintiff
had testified, and would contradict him if his testimony was
false: People v. Sutton, 73 Cal. 248, 15 Pac. 86; Klocken-
baum v. Pierson, 22 Cal. 160; Stoakes v. Monroe, 36 Cal. 384.
The case of Kenezleber v. Wahl, 92 Cal. 202, 28 Pac. 225.
cited by respondent's counsel, does not answer their purpose,
as that was an appeal from an order granting a new trial.
In that case, as in this, the necessity for the newly discovered
evidence was first discovered at the trial, but the new wit-
nesses resided one hundred miles from the place of trial. And
as to the means of discovering the new evidence the court
said: "It is therefore evident that the plaintiff possessed no
means by which he could discover the evidence which is al-
leged to be newly discovered, and that he had no knowledge
of the evidence or of the witnesses by whom it could be es-
tablished until after the trial." Besides, the usual deference
was expressly paid to the discretion exercised by the judge
who tried the case in granting the new trial.

5. Another ground upon which a new trial is asked is that
of misconduct of the jury, in that eleven of the jurors were
induced to assent to the verdict by a resort to the determina-
tion of chance. This point is supported by the following
affidavit of a juror, to which there is no counter-affidavit:

" [Title of Court and Cause.]

"State of California,
  · City and County of San Francisco—ss.:

"J. P. Larsen, being first duly sworn, says on oath: I am
one of the jurors who were impaneled to try the above-en-
titled action. Said cause came on for trial on the 24th day
of March, A. D. 1890, and was submitted to the jury for their
verdict on the 25th day of March, A. D. 1890. Eleven of
said jurors rendered their verdict in favor of plaintiff for
the sum of $3,333 on the said last-mentioned day. When the

jury retired under the charge of the sheriff to consider their verdict in said case, some of the jurors considered the propriety of giving the sum of $10,000 damages, and one was in favor of rendering a verdict of $1 in favor of plaintiff. Being unable to agree as to the amount of their verdict, it was then agreed by and between said jurors that their verdict should be arrived at in the following manner, and that they should be bound by the result, to wit: That each juror should write on a slip of paper the amount to which he thought plaintiff was entitled, and, after doing so, their amounts should be added together and divided by twelve, and the quotient resulting therefrom, whatever the same should be, should be the verdict of said jury. That thereupon each of said jurors other than H. McCabe wrote down on a slip of paper the amount which he thought plaintiff was entitled. Some amounts of which were in excess of $5,000, the amount demanded by plaintiff. Said amounts were then added together and divided by twelve, the result of said division being the sum of $3,333, the amount of verdict by said jury. That when the division aforesaid resulted in a quotient of $3,333, such was taken as their verdict, in pursuance of said prior arrangement to be bound by said result, without further consultation or assent among them.

"J. P. LARSEN."

"Subscribed and sworn to before me, this 10th day of May, A. D. 1890.

"H. P. TRICOU,
"Notary Public."

On the authority of the late case of Dixon v. Pluns, decided by the court in bank, and filed May 31, 1893, 98 Cal. 384, 35 Am. St. Rep. 180, 20 L. R. A. 698, 33 Pac. 268, I think this affidavit shows that the verdict was determined by chance, in the sense of the second subdivision of section 657 of the Code of Civil Procedure, and, therefore, that the affidavit of the juror was admissible as evidence of the fact. But, inasmuch as the case of Dixon v. Pluns, supra, overrules the case of Turner v. Water Co., 25 Cal. 397, on the authority of which respondent's counsel appear to have confidently relied, I think respondent should have an opportunity to file counter-affidavits to that of the juror Larsen, and that

the motion for new trial should be reheard and decided solely upon the alleged ground of misconduct of the jury, and upon such additional affidavits as may be offered by either party. To this end I think the order refusing a new trial should be reversed, the cause remanded, and the lower court instructed to rehear and decide the motion for new trial on the alleged ground of misconduct of the jury alone; and, upon such rehearing, to admit and consider such additional pertinent affidavits as may be filed by either party within twenty days after the filing of the remittitur.

We concur: Belcher, C.; Temple, C.

PER CURIAM.—For the reasons given ·in the foregoing opinion the order refusing a new trial is reversed, the cause remanded, and the lower court instructed to rehear and decide the motion for new trial on the alleged ground of misconduct of the jury alone, and upon such rehearing to admit and consider such additional pertinent affidavits as may be filed by either party within twenty days after the filing of the remittitur.