[No. 15792.    Department One.—June 28, 1895.]

CHARLES C. JUDSON, EXECUTOR, ET AL., RESPOND-
ENTS, v. GIANT POWDER COMPANY, APPEL-
LANT.

NEGLIGENCE — EXPLOSION OF DYNAMITE — DESTRUCTION OF PREMISES OF
GRANTOR—MAXIM.—Where a powder company is charged with negli-
gence in the use of dynamite upon its premises, whereby an explosion
was caused resulting in the destruction of the plaintiff's property, the
fact that the plaintiff sold the premises where the explosion occurred
for the purpose of a dynamite factory is not material, and the maxim,
*Volenti non fit injuria,* does not apply to the case.

ID.—RIGHTS OF GRANTOR—CARE OF GRANTEE—ASSUMPTION OF RISK.—
In making a grant of premises for the purpose of a dynamite factory
the grantor has a right to assume that due care will be exercised in the
conduct of the business, and has a right to demand that such care be
exercised; and the grantor does not assume the risk of explosions caused
by the negligent acts of the owner of the powder works by continuing
to do business near their locality after being served with notice of the
danger that surrounds the manufacture of dynamite.

ID.—PRESUMPTION OF NEGLIGENCE FROM FACT OF EXPLOSION.—Negligence
is *prima facie* presumed from the fact of the explosion of a nitro-glycer-
ine factory, in the absence of evidence showing care on the part of the
employees.

ID.—ACCIDENT OUT OF ORDINARY COURSE—CONTRACTUAL RELATION NOT
NECESSARY.—When a thing which causes injury is shown to be under
the management of the defendant, and the accident is such as in the
the ordinary course of things does not happen if those who have the
management use proper care, it affords reasonable evidence, in the ab-
sence of an explanation by the defendant, that the accident arose from
want of care, and no question of contractual relation forms an element
in such a case.

ID.—EXPERT EVIDENCE.—The *prima facie* case of negligence arising from
the fact of the explosion is strengthened and made complete by expert
testimony to the effect that, if the factory was properly conducted and
the employees were careful during the process of manufacturing, an
explosion would not occur.

APPEAL from a judgment of the Superior Court of
Alameda County and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*Galpin & Zeigler,* and *J. F. Cowdery,* for Appellant.

Judson and Shepard, having sold the premises for
the manufacture of dynamite, cannot recover under the

maxim, *Volenti non fit injuria.* (Anderson's Dictionary of Law, 1093; Smith on the Law of Damages (1889), 139; Brown's Legal Maxims, 201, 202, and cases cited; *Ilott* v. *Wilkes,* 2 Barn. & Ald. 311; *Tuff* v. *Warman,* 5 Com. B:, N. S., 573; *Thomas* v. *Quartermaine,* 18 Q. B. Div. 685; *Seymour* v. *Maddox,* 16 Q. B. 326; *Woodly* v. *Metropolitan District Ry. Co.,* 2 Ex. Div. 384; *Gould* v. *Oliver,* 2 Scott N. R. 257, 264; *Macon etc. R. R.* v. *McConnell,* 27 Ga. 481.) The grantors assumed the risk of imminent danger from the dynamite factory, and cannot recover for injury suffered to their adjoining buildings. (*De Forest* v. *Jewett,* 88 N. Y. 264; *Marsh* v. *Chickering,* 101 N. Y. 396; *Harley* v. *Merrill Brick Co.,* 83 Iowa, 73; Ray on Negligence, 668; *Marquette etc. R. R. Co.* v. *Spear,* 44 Mich. 169; 38 Am. Rep. 242; *Goldstein* v. *Chicago etc. Ry. Co.,* 46 Wis. 405; *City of Bloomington* v. *Reade,* 2 Ill. App. 542; *Hubbell* v. *Yonkers,* 104 N. Y. 434; 58 Am. Rep. 522; *Abend* v. *Terre Haute etc. R. R. Co.,* 111 Ill. 202; 53 Am. Rep. 616; *Chicago etc. R. R. Co.* v. *Pennell,* 94 Ill. 454; *Toledo etc. R. R. Co.* v. *Pindar,* 53 Ill. 447; *Illinois Cent. R. R. Co.* v. *McClelland,* 42 Ill. 355; *Marquette etc. Co.* v. *Spear, supra; Chaffee* v. *Telephone and Tel. Co.,* 77 Mich. 625; 18 Am. St. Rep. 424; *Levy* v. *Carondolet Canal etc. Co.,* 34 La. Ann. 180; *Factors & Traders' Ins. Co.* v. *Welein,* 42 La. Ann. 1046; *Emery* v. *Raleigh etc. R. R. Co.,* 109 N. C. 589.) The burden of proving negligence was on the plaintiff, and, it being presumed that the defendants had performed their duty, the mere fact of the injury from the explosion is not proof of negligence. (*Parish* v. *Williams,* 88 Iowa, 66; *Cosulich* v. *Standard Oil Co.,* 122 N. Y. 118; 19 Am. St. Rep. 475; *Losee* v. *Buchanan,* 51 N. Y. 476; 10 Am. Rep. 623; *Dygert* v. *Bradley,* 8 Wend. 469; *Walker* v. *Chicago etc. Ry. Co.,* 71 Iowa, 658; *Huff* v. *Austin,* 46 Ohio St. 386; 15 Am. St. Rep. 613; *Young* v. *Bransford,* 12 Lea, 232; *Rose* v. *Stephens etc. Co.,* 11 Fed. Rep. 438; *Beck* v. *Carter,* 68 N. Y. 283; 23 Am. Rep. 175; Thompson on Negligence, 1227; *Nitro-Glycerine case,* 15 Wall. 524; *Booth* v. *Rome etc. R. R. Co.,* 140 N. Y. 267; 37 Am. St. Rep. 552;

*Smith* v. *Kenrick*, 7 Com. B. 515; *Baird* v. *Williamson*, 15 Com. B., N. S., 376; *Wilson* v. *Waddell*, L. R. 2 App. Cas. 95; *Benner* v. *Atlantic Dredging Co.*, 134 N. Y. 156; 30 Am. St. Rep. 649; *Rhodes* v. *Dunbar*, 97 Pa. St. 274; 98 Am. Dec. 221; 7 Am. & Eng. Ency. of Law, 517, 518, tit. "Explosions"; *People* v. *Sands*, 1 Johns. 84; 3 Am. Dec. 296; *Fahn* v. *Reichart*, 8 Wis. 255; 76 Am. Dec. 237; *Clark* v. *Foot*, 8 Johns. 421; *Dumesnil* v. *Dupont*, 18 B. Mon. 804.)

*Page & Eells*, for Respondents

One engaged in the business of powder making in proximity to other buildings is liable in damages for injury to such buildings by explosion.   (Civ. Code, sec. 3479; *Colton* v. *Onderdonk*, 79 Cal. 158; 58 Am. Rep. 556; *Munro* v. *Pacific etc. Dredging Co.*, 84 Cal. 515; 18 Am. St. Rep. 248; *Heeg* v. *Licht*, 80 N. Y. 579; 36 Am. Rep. 654; *Bohan* v. *Port Jervis Gaslight Co.*, 122 N. Y. 18; *Laflin etc. Co.* v. *Tearney*, 131 Ill. 322; 19 Am. St. Rep. 34; *Emory* v. *Hazard Powder Co.*, 22 S. C. 476; 53 Am. Rep. 730; *Wier's Appeal*, 74 Pa. St. 230; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; 51 Am. Dec. 279; *People* v. *Sands*, 1 Johns. 78; 3 Am. Dec. 296; *Myers* v. *Malcolm*, 6 Hill, 292; 41 Am. Dec. 744; *Cheatham* v. *Shearon*, 1 Swan, 213; 55 Am. Dec. 734; *Fletcher* v. *Rylands*, L. R. 3 H. L. 330.)   Plaintiffs, by their grant of their right to maintain the powder works did not waive defendant's negligence.   (*Tipping* v. *St. Helens Smelting Co.*, L. R. 1 Ch. App. Cas. 66; *City of Sherman* v. *Langham* (Tex., May 13, 1890), 13 S. W. Rep. 1042; *Cook* v. *Champlain Transportation Co.*, 1 Denio, 98; 1 Thompson on Negligence, 570, citing *Delaware etc. Canal Co.* v. *Lee*, 22 N. J. L. 243; *Brearly* v. *Delaware etc. Canal Co.*, 20 N. J. L. 236; *Hatch* v. *Vermont Cent. R. R. Co.*, 25 Vt. 49, 70; *Spencer* v. *Hartford etc. R. R. Co.*, 10 R. I. 14; *Morris Canal etc. Co.* v. *Ryerson*, 27 N. J. L. 457, 476; *Lyman* v. *Boston etc. R. R. Co.*, 4 Cush. 288; *Pittsburg etc. R. R. Co.* v. *Nelson*, 51 Ind. 150; *Selden* v. *Delaware etc. Canal Co.*, 29 N. Y. 640; *Dean* v. *McLean*, 48 Vt. 412; *Walker* v.

*Board of Public Works,* 16 Ohio, 540; *Louisville* v. *Louis-
ville Rolling Mill,* 3 Bush, 416; 96 Am. Dec. 234; *Wilson*
v. *New Bedford,* 108 Mass. 261; 11 Am. Rep. 352; *Biscoe*
v. *Great Eastern Ry. Co.,* L. R. 16 Eq. Cas. 637; *Ricket* v.
*Metropolitan Ry. Co.,* L. R. 2 H. L. 175.) When the
plaintiff shows damage resulting from the act of the
defendant, which with proper care does not ordinarily
produce damages, he makes out a *prima facie* case of
negligence. (*Ellis* v. *Portsmouth etc. R. R. Co.,* 2 Ired. L.
138; *Butcher* v. *Vaca Valley etc. R. R. Co.,* 67 Cal. 524; *Hull*
v. *Sacramento Valley R. R. Co.,* 14 Cal. 387; 73 Am. Dec.
656; *Mullen* v. *St. John,* 57 N. Y. 567; 15 Am. Rep. 530;
Sedgwick on Damages, 592; Shearman and Redfield on
Negligence, sec. 60; *Byrne* v. *Boadle,* 2 Hurl. & C. 722;
*Scott* v. *London Dock Co.,* 3 Hurl. & C. 596; *Lyons* v.
*Rosenthal,* 11 Hun, 46; *Vincett* v. *Cook,* 4 Hun, 318;
*Warren* v. *Kauffman,* 2 Phila. 259.)

GAROUTTE, J.—Respondents recovered judgment for
the sum of forty-one thousand one hundred and sixty-
four dollars and seventy-five cents, as damages for acts
of negligence. This appeal is prosecuted from such
judgment and from an order denying a motion for a
new trial. The damages to respondents' property were
occasioned by an explosion of nitro-glycerine, in process
of manufacture into dynamite, in appellant's powder
factory, situated upon the shore of the bay of San
Francisco. Appellant's factory buildings were arranged
around the slope of a hill facing the bay. Nearest to
respondents' property was the nitro-glycerine house;
next was the washing-house; next were the mixing-
houses; then came the packing-houses, and finally the
two magazines used for storing dynamite. These vari-
ous buildings were situated from fifty to one hundred
and fifty feet apart, and a tramway ran in front of them.
The explosion occurred in the morning during working
hours, and originated in the nitro-glycerine house.
There followed, within a few moments of time, in regu-
lar order, the explosion of the other buildings, the two

magazines coming last; but, though last, they were not
least, for their explosion caused the entire downfall and
destruction of respondents' factory, residences, and stock
on hand.   There is no question but that the cause of
this series of explosions following the first is directly
traceable, by reason of fire or concussion, to the nitro-
glycerine explosion.   Of the many employees of appel-
lant engaged in and about the nitro-glycerine factory at
the time of the disaster none were left to tell the tale.
Hence, any positive testimony as to the direct cause of
the explosion is not to be had.   The witnesses who saw
and knew, like all things else around, save the earth
itself, were scattered to the four winds.

1. Respondents sold the premises to appellant for
the manufacture of dynamite, and it is claimed that
the maxim, *Volenti non fit injuria,* applies, and therefore
no recovery can be had.   We attach but little impor-
tance to this contention.   The grant of these premises
for the purposes of a dynamite factory in no way carried
to appellant the right to conduct its factory, as against
the grantors, in any and every way it might see fit.
There is no principle of law sustaining such a propo-
sition.   Let it be conceded that respondents, by reason
of their grant, could not invoke the aid of a court of
equity to prevent the appellant from conducting its
business; still that concession proves nothing.   This
action is not based upon the theory that appellant's
business is a nuisance *per se,* but negligence in the
manner in which the business was conducted was
alleged in the complaint, and is now insisted upon
as having been proved at the trial.   In making the
grant respondents had a right to assume that due care
would be exercised in the conduct of the business, and
certainly they have a right to demand that such care
be exercised.

It is argued that the explosion of all powder-works is
a mere matter of time; that such explosions are neces-
sarily contemplated by every one who builds beside such
works, or who brings dynamite into his dooryard.   It

is further contended that appellant gave to respondents actual notice of the dangerous character of its business by a previous explosion, which damaged respondents' property, and that respondents, by still continuing in business after such notice, in a degree assumed and ratified the risk, and cannot now be heard to complain. The only element of strength in this line of argument is its originality. The contention that in the ordinary course of events all powder factories explode, conceding such to be the fact, presents an element foreign to the case. The doctrine of fatalism is not here involved. In the ordinary course of events the time for this explosion had not arrived, and appellant had no legal right to hasten that event by its negligent acts. Neither do we think respondents lost any legal rights by continuing to do business in this locality after being served with notice of the danger that surrounded them. While the notice was in the form of an object lesson, which came to them in no uncertain tones, yet appellant was not justified in serving it, nor were respondents negligent in disregarding it. Respondents were not bound to abandon their property, though negligence of appellant in the conduct of its factory was ever a menace and danger to their lives and property. Conceding that respondents, by their grant, thereby assumed certain risks and dangers which may be said to always surround the manufacture of dynamite, still they assumed no risks and waived no action for damages which might arise through appellant's negligence. Both reason and authority support this conclusion.

2. It is contended that respondents offered no evidence tending to show that the explosion of the nitroglycerine factory was occasioned by the negligence of appellant, and this contention brings us to the consideration of a most important principle of law. In addition to the fact of an explosion being established, the respondent offered expert testimony to the effect that if the factory was properly conducted, and the employees careful during the process of manufacturing, an explo-

sion would not occur. For the present we lay aside the evidence of the experts, and meet squarely and directly the question presented: Does the proof of the explosion draw with it a presumption of negligence sufficient to establish a *prima facie* case for a recovery? While the cases are not in entire accord in holding that a presumption of negligence arises from the fact of the explosion, still they largely preponderate upon that side, and we think but few well-considered cases can be found looking the other way. All courts agree that, where contractual relations exist between the parties, as in cases of common carriers, proof of the accident carries with it the presumption of negligence, and makes a *prima facie* case. This proposition is elementary and uncontradicted; therefore, the citation of authority is unnecessary. Yet we know of no sound reason, and have found none stated in the books, why this principle of presumptions should be applicable to cases involving contractual relations and inapplicable to cases where no contractual relations exist. It is intimated in some Indiana case that the presumption arises, upon proof of the accident, by reason of the carrier's contract to safely deliver the passenger at his destination, but there is no such contract. The carrier is not an insurer of his passengers; if he were, this presumption of negligence arising from the accident, aside from the act of God, would be conclusive and irrebuttable; but such is not the fact, for it is only *prima facie* and always disputable. As was well said by the court in *Rose* v. *Stephens etc. Co.*, 11 Fed. Rep. 438: "Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than in any other class, but there is no foundation in authority or reason for any such limitation of the rule of evidence. The presumption originates from the nature of the act, not from the nature of the relations between the parties." The carrier's contract with his passenger is simply to exercise a certain degree of care in his transportation. It is a duty which the law enjoins upon him; but the law also enjoins the

duty upon this appellant and all others, in the conduct of their business, to exercise a certain degree of care toward this respondent and all mankind. The duty which the law enjoins in the two cases only differs in the degree of care to be exercised. The principle of law involved is wholly the same; and, as has been said, the reason of the rule is not found in the relations existing between the party injuring and the party injured. The presumption arises from the inherent nature and character of the act causing the injury. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown.

Based upon the foregoing principles a rule of law has been formulated, bearing upon a certain class of cases, where damages either to person or property form the foundation of the action. This rule is well declared in Shearman and Redfield on Negligence, section 60: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." Tested by this rule, no question of contractual relation could ever form an element in the case. With the same reason it might as well be said that cases of contract were excluded from the effect of the rule as that cases of pure tort were excluded; but, upon the contrary, it is plainly evident that both classes of actions come equally within its provisions. In speaking to this question, it is said in Cooley on Torts, 799: "The rule applied to carriers of passengers is not a special rule to govern only their conduct, but is a general rule which may be applied wherever the circumstances impose

upon one party alone the obligation of special care."
The author then cites the case of a householder engaged
in repairing his roof; a piece of slate falls therefrom
and injures a traveler upon the street. He then says:
"True, the act of God, or some excusable accident, may
have caused the slate to fall, but the explanation should
come from the party charged with the special duty of
protection."

The important question here involved, and the want
of harmony in the decisions of courts bearing upon it,
seem to demand a citation somewhat in detail of the
many authorities which hold against appellant's views
of the law. In England the authorities are in entire
accord. Plaintiff was passing along a highway, under
a railroad bridge, when a brick used in the construction
of the bridge fell and injured him. Negligence in the
railroad was presumed. (*Kearney* v. *London Ry. Co.*,
L. R. 5 Q. B. 411.) A barrel of flour rolled out of the
window of a warehouse, injuring a person passing upon
the street. Negligence in the warehouseman was pre-
sumed. (*Byrne* v. *Boadle*, 2 Hurl. & C. 722.) The same
rule was declared, upon a similar state of facts, in *Scott*
v *London Docks Co.*, 3 Hurl. & C. 596; likewise in *Briggs*
v. *Oliver*, 4 Hurl. & C. 403. The explosion of a boiler
of a steamboat is *prima facie* evidence of negligence.
(*Posey* v. *Scoville*, 10 Fed. Rep. 140; *Rose* v. *Stephens etc.*
*Co.*, 11 Fed. Rep. 438; *Grimsley* v. *Hawkins*, 46 Fed. Rep.
400.) In the Rose case it is said: "In the present
case the boiler which exploded was in the control of the
employees of the defendant. As boilers do not usually
explode when they are in a safe condition, and are prop-
erly managed, the inference that this boiler was not
in a safe condition, or was not properly managed, was
justifiable." The same general principle is declared in
*Cummings* v. *National Furnace Co.*, 60 Wis. 603; *Mul-
cairns* v. *City of Janesville*, 67 Wis. 24; *Kirst* v. *Milwau-
kee etc. Ry. Co.*, 46 Wis. 489; *Thomas* v. *Western Telegraph
Co.*, 100 Mass. 156; *Howser* v. *Cumberland etc. Ry. Co.*,
80 Md. 146; 45 Am. St. Rep. 332. In the case of

*Dixon* v. *Plums*, 98 Cal. 385, 35 Am. St. Rep. 180, a case which, in its facts, is an exact photograph of one of the New York cases hereafter cited, a chisel, used by a workman upon a building, fell upon and injured a girl while passing upon the street below. It was held that a *prima facie* case of negligence was established, and that the rule as declared in section 60 of Shearman and Redfield on Negligence was sound law and controlling.

While there is some discord existing in the New York authorities as to the true doctrine upon this question, still they are largely in line with the cases we have above cited. *Mullen* v. *St. John*, 57 N. Y. 567, 15 Am. Rep. 530, is a leading case upon the question, and, while it has been vigorously assaulted at various times during the past twenty years, it still stands as a declaration of law by the courts of that state, not weakened and mutilated by such assaults, but rather strengthened and unscathed. In *Cahalin* v. *Cochran*, 1 N. Y. St. Rep. 583, negligence was inferred from the fact of a chisel falling from a building where workmen were engaged, and striking plaintiff when walking upon the street. A case to the same effect is *Gall* v. *Manhattan Ry. Co.*, 5 N. Y. Supp. 185; 24 N. Y. St. Rep. 24. *Mullen* v. *St. John*, *supra*, is expressly approved, and the doctrine for which we are here contending ratified to its full limits in the very recent case of *Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418; 30 Am. St. Rep. 678.

As supporting a contrary doctrine, one of the leading cases is *Young* v. *Bransford*, 12 Lea, 232. Yet, in the report of that case, we find the following language: "At the same time the fact that there was an explosion, which is not an ordinary incident of the use of a steam boiler, ought to have some weight, inasmuch as it may be out of the power of the aggrieved party in some instances to prove any more. The reasonable rule would seem to be that laid down by Judge Wallace: 'That from the mere fact of an explosion it is competent for the jury to infer, as a proposition of fact, that there was some negligence in the management of the

bo'ler, or some defect in its condition.'" Another case
is *Huff* v. *Austin*, 46 Ohio St. 386, 15 Am. St. Rep. 613,
a case which relies for support in part upon *Losee* v.
*Buchanan*, 51 N. Y. 476; 10 Am. Rep. 623. Yet, in *Mul-
len* v. *St. John, supra,* the Losee case was expressly held
to be not in point by reason of the presence of other
evidence. *Cosulich* v. *Standard Oil Co.*, 122 N. Y. 118,
19 Am. St. Rep. 475, is the latest authority to which our
attention had been directed holding these views. It
cites the Tennessee and Ohio cases, and also relies, as
do other of these cases, upon a general statement found
in Thompson on Negligence, page 1227, namely: "But
it is believed that it is never true, except in contrac-
ual relations, that the proof of the mere fact that the
accident happened to the plaintiff, without more, will
amount to evidence of negligence on the part of the
defendant." The case cited by Mr. Thompson in no
way supports this text, if the text is to be construed as
the Cosulich case seems to construe it, and the learned
author's illustrations which immediately follow conclu-
sively indicate that, in making the statement quoted,
he never contemplated for it any such construction as
the New York court seems to give it. This is doubly
apparent when we see that upon the same page he in-
dorses the doctrine of *Byrne* v. *Boadle, supra.* Indeed,
the author prefaces his whole discussion of the question
of *res ipsa loquitur* by a report in full of the celebrated
case of *Kearney* v. *London Ry. Co., supra,* the doctrine of
which he fully indorses, and which in no sense was a
case of contractual relation. Beyond all this, the Volk-
mar case, already cited, is a later expression emanat-
ing from the New York court, and earlier cases coming
from the same source, if opposed to the doctrine there
declared, must give way.

There is another class of cases in all essentials fully
supporting our views upon this question of negligence.
These cases arise in the destruction of property caused
by fire escaping from locomotive engines, and, while
there is some conflict in the authorities as to the true

rule, it is said in Shearman and Redfield on Negligence, section 676: "The decided weight of authority and of reason is in favor of holding that, the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all those precautions for confining sparks and cinders (as the case may be) which have been already mentioned as necessary. This is the common law of England, and the same rule has been followed in New York, Maryland," etc. (Citing many other states.) While we have not deemed it necessary to verify the correctness of the statement of the authors as to all the states mentioned, we do say there are numberless cases supporting the text. (See *Pigott* v. *Eastern Counties Ry. Co.*, 3 Com. B. 228; *Louisville etc. R. R. Co.* v. *Reese*, 85 Ala. 497; 7 Am. St. Rep. 66; *Spaulding* v. *Chicago etc. Ry. Co.*, 30 Wis. 110; 11 Am. Rep. 550, citing many cases.)

In this state the question has never been directly passed upon as to whether or not negligence will be presumed from the fact of sparks escaping from a locomotive engine, and the destruction of grain fields resulting therefrom. In *Butcher* v. *Vaca Valley etc. R. R. Co.*, 67 Cal. 518, the doctrine is inferentially favored, although in that case the plaintiff placed an expert witness upon the stand, who testified that "a perfect engine, properly equipped and properly run, will not ordinarily throw out sparks sufficient to start a fire." This line of evidence was also held sufficient to establish a *prima facie* case of negligence in *Hull* v. *Sacramento Valley R. R. Co.*, 14 Cal. 387, 73 Am. Dec. 656, and *Henry* v. *Southern Pac. R. R. Co.*, 50 Cal. 176. For our purpose it is not necessary to enter into a prolonged investigation to determine why this evidence of the expert strengthened plaintiff's case. But, taking the converse of the proposition, let us assume that defendant's engine was a perfect engine, properly equipped and properly run, and that, notwithstanding such conditions, it would ordinarily, when in use, throw out sparks of fire, leaving in

its wake, as it passed through the country, property destroyed and possibly lives lost. Certainly this could hardly be tolerated in law. Hence we fail to fully appreciate the importance of this line of evidence. Such conduct upon the part of a railroad company would render it guilty of the commission of a nuisance, and liable in damages for property destroyed. Certainly it is no answer to such a condition of things to say that the legislative grant to the corporation to do business with the aid of steam locomotives carries with it the right to destroy the property of adjoining owners; but rather we must assume that the grant was made only after a prior determination by the same legislative power that a perfect locomotive engine, properly equipped and properly run, will not ordinarily throw out sufficient sparks to destroy adjoining property. It is only upon such a theory that the right to do business by the use of this character of implement was ever granted; and, hence, we again say that it may be considered doubtful if this class of evidence strengthens the plaintiff's case. For it is but proving as a fact some thing of which the courts, and possibly all the world, take full notice.

In the case at bar, following the lines marked out by the cases last cited, respondents placed before the court expert evidence to the effect that, if the correct process of manufacturing and handling dynamite was carefully carried out, an explosion would not occur. This evidence is stronger than in the smokestack cases, for here it declares as a certainty what there is only stated to be the probable or ordinary result; but, be that as it may, if this character of evidence was relevant and material in the smokestack cases, it is equally relevant and material here. If it was sufficient there to complete and perfect a *prima facie* case of negligence it is ample here to do the same. Again, if appellant had the right under the laws of the state to manufacture dynamite (which is conceded), and if, by reason of the existence of such right, courts may assume that, if dynamite is properly handled in the process of manufacture, explosions will

CVII. Cal.—36

not probably occur, then respondents' case is doubly proven, for here we have, not only the presumption of the existence of certain conditions, but the evidence of witnesses as to the existence of them.

In concluding this branch of the case we can only reiterate that the true rule appears to be found in section 60 of Shearman and Redfield on Negligence, which we have already quoted; and, gauging this case by the test there prescribed, a *prima facie* case of negligence was established by respondents' evidence. This case seems to clearly come within the provisions of the rule there declared. There is nothing to distinguish it in principle from the army of cases that have been held to come directly within its provisions. Appellant was engaged in the manufacture of dynamite. In the ordinary course of things an explosion does not occur in such manufacture if proper care is exercised. An explosion did occur; *ergo*, the real cause of the explosion being unexplained, it is probable that it was occasioned by a lack of proper care. The logic is unassailable, and the principle of law of presumptions of fact erected thereon is as sound as the logic upon which it is based.

3. Questions of negligence in the storage of the gunpowder become unnecessary to consider, owing to our views upon the main question discussed. Neither do we find any thing in the record bearing upon the measure or amount of damages declared and decreed by the court demanding a new trial of the case.

For the foregoing reasons the judgment and order are affirmed.

VAN FLEET, J., and HARRISON, J., concurred.

Hearing in Bank denied.