[S. F. No. 7556.   Department One.—December 6, 1917.]

# GWYNEDDE ·A. TOWER, Respondent, v. ·HUMBOLDT TRANSIT COMPANY, Appellant.

NEGLIGENCE—STREET RAILROAD—INJURY TO PERSON LYING UNCONSCIOUS ON TRACK—LIABILITY—BURDEN OF PROOF.—In an action to recover damages for injuries sustained by a girl who claimed that, at the time she was struck by an electric car, she was lying unconscious in a fainting fit on the track, assuming that her position was as claimed by her, it was still necessary, before liability could be imposed upon the defendant, to show that the failure to avoid striking her was due to some want of ordinary care on the part of the railway or its servants.

ID.—PRESUMPTION—BURDEN OF PROOF.—Negligence is not presumed, and the party asserting it must prove its existence by a preponderance of proof.

ID.—RES IPSA LOQUITUR—COLLISION BETWEEN STREET-CAR AND PEDESTRIAN.—The doctrine or rule of *res ipsa loquitur* has no application to the case of a collision between a street-car and a pedestrian.

ID.—PRESUMPTION FROM OCCURRENCE OF ACCIDENT.—The presumption of negligence from the mere occurrence of an accident arises only where the occurrence is such as does not ordinarily happen without negligence on the part of the party charged.

ID.—PEDESTRIAN AND STREET-CAR—SUPERIORITY OF RIGHTS—DEGREE OF CARE REQUIRED BY EACH.—As between street-cars and other vehicles or persons on the public streets, neither has a superior right, and neither is bound to exercise a higher degree of care than the other.

ID.—INSTRUCTION MISLEADING.—When a person on a street is struck by a street-car, the mishap is quite as likely to be due to the fault of the person struck or of some third person, or to some unforeseen and unpreventable cause, and therefore an instruction, in an action against a street railway for injuries to a pedestrian on its track, that when the thing which causes an accident is shown to be under the management and control of the defendant, and the accident is such as does not ordinarily happen if those in control use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from lack of ordinary care, was misleading, and inapplicable.

ID.—ERRONEOUS INSTRUCTION — AMPLIFICATION OF FOREGOING INSTRUCTION—PRESUMPTION OF NEGLIGENCE—BURDEN OF PROOF.—An amplification of the foregoing instruction to the effect that if the plaintiff had proved she was lawfully on the track at the time of the accident, and that while there she was struck and injured by the car, and that the car was managed, operated, and controlled by the

defendant, then she had made out a *prima facie* case, and, from such circumstances, the law presumes that the defendant was negligent, and the burden was cast upon the defendant to show that it was not negligent or careless or reckless in the operation of the car, was erroneous.

Id.—Erroneous Instruction—Error not Cured.—Error in an instruction which, in effect, made mere proof of the accident or injury suffice to impose on the defendant responsibility for such injury, was not cured by other parts of the charge to the effect that the plaintiff must establish negligence by a preponderance of the evidence.

Id.—Instructions Generally—Argumentativeness—Elaboration of Facts.—An instruction is objectionable that is argumentative and goes too elaborately into the particular facts relied on by one of the parties to the action; it is better for the court to state rules of law generally rather than to elaborate matters of evidence.

Id.—Constitutional Law—Disregarding Unprejudicial Error.— Where the real merits of a case, as disclosed by the evidence, are so doubtful as to require careful consideration of substantial errors, which may have had an important influence in leading the jury to the verdict which it found, the case is not one in which grave error can be disregarded under the provision of section 4½ of article VI of the constitution.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial. George D. Murray, Judge.

The facts are stated in the opinion of the court.

Coonan & Kehoe, for Appellant.

Pierce H. Ryan, for Respondent.

SLOSS, J.—This is an action to recover damages for personal injuries. At the time of the occurrences in controversy, the plaintiff was a minor of the age of about sixteen years. The trial resulted in a verdict and judgment in her favor. The defendant appeals from the judgment, and from an order denying its motion for a new trial.

The defendant owns and operates a system of electric cars in the city of Eureka. The claim of the plaintiff was that on January 12, 1913, she was run over by one of defendant's cars, sustaining injuries which required the amputation of her right arm and her right leg. The complaint was in four counts. Each of the four alleged that plaintiff was lawfully

upon the track of the defendant. The first count alleged in general terms that plaintiff was injured through the careless and negligent manner in which the car was operated. The second ascribed the injuries to the negligent failure of the motorman to lower or "trip" the fender with which the car was equipped. The third counted on the failure to provide the car with sufficient brakes or other appliances for stopping the car. The fourth set up the negligence of the motorman in failing to keep a lookout for persons on the track, and thereby failing to discover the presence of the plaintiff on such track.

The defendant denied all of the allegations of negligence, denied that plaintiff was ever run over by defendant's car, and alleged that plaintiff's injuries were caused by her own negligence, and that of her parents.

A brief statement of the outstanding features of the case is necessary to an understanding of the points urged for reversal. The defendant operates a single track road along E Street, which, at the place with which we are concerned, is an outlying and little frequented thoroughfare, with a rough surface, more or less overgrown with grass and weeds. E Street runs north and south, and is intersected by Harris, Grotto, and Henderson Streets, the last named being the most northerly of the three. The accident occurred between Grotto and Henderson Streets. Between Harris and Grotto Streets the defendant maintains a diamond switch or turnout for the passage of its cars. There is a sidewalk on the westerly side of E Street. The incidents in controversy took place about 6 o'clock on the evening of January 12, 1913. The sun had already set, and it was dark, or between dusk and dark There had been some rain or fog during the day, and the roadway on E Street was muddy. Shortly before the accident one of the defendant's cars had come southerly on E Street. At the switch it met and passed car No. 11, which was going northerly, and which, as plaintiff claims, inflicted the injuries complained of. The case sought to be established by the plaintiff was, in effect, this: She had for a considerable time been subject to occasional, but sudden, attacks of fainting or unconsciousness, lasting from ten to thirty minutes. She testified that, on the evening in question, she was walking along the sidewalk on E Street, when she observed a cat on the other side of the street. Her interest was, for some

reason, attracted, and she crossed the street to approach the cat. As she started to return to the sidewalk she saw the south-bound car coming, and after waiting for it to pass, was proceeding on her way across the track, when she fainted. She remained unconscious until she felt something strike her leg and her arm repeatedly and with great force. Witnesses, who were on the passing car, heard screams. The car was stopped and several men, including the motorman and the conductor, walked back a short distance and found the plaintiff lying by the side of the track with her right arm and right leg crushed and mangled.

The plaintiff produced no witnesses who had seen her lying on the track. The motorman who was operating the car testified that he had kept a lookout ahead, and had seen no person or object on or between the rails. His story was that, as he approached the place where plaintiff was found, he saw to the left of the track, and a couple of feet from it, some dark object which he took to be a buggy or automobile robe. He then began to slow down the car. Just as he was about to pass the object, he noticed a movement, and thought that the dark mass might be the body of some person. He then brought the car to a standstill. There was considerable testimony, *pro* and *con*, regarding the condition of the brakes. The defendant also offered evidence that plaintiff had made verbal and written statements, which could fairly be interpreted as admissions that plaintiff had intentionally brought the injuries upon herself. The plaintiff, in rebuttal, sought to weaken or destroy the effect of these declarations by testimony tending to show that she was not in a normal condition of mind when she made the statements.

It is not necessary to go beyond this incomplete summary of the evidence, or to attempt any discussion of the persuasive force of the showing on either side. For present purposes, it is enough to say that a careful reading of the record produces a very substantial doubt concerning the true state of facts. It is beyond question that there was ample evidence upon which the jury might have found that there was no proof of negligence on the part of defendant's employees, contributing to the injuries complained of by the plaintiff. We are not intimating that the evidence was not sufficient to support a verdict in plaintiff's favor. The point is, merely, that the real merits of the case, as disclosed by the evidence,

are at the least so doubtful as to require careful consideration of substantial errors which may have had an important influence in leading the jury to the verdict which it found. In other words, the case is not one in which grave error can be disregarded under the provision of section 4½ of article VI of the constitution.

The essential point in controversy was whether the defendant had negligently run its car upon and over the plaintiff when she was lying unconscious on the track in the path of the approaching car. Her alleged position on the track, and her condition at the time, were in dispute. But even if it be said that her position was as claimed by her, it was still necessary, before liability could be imposed on the defendant, to show that the failure to avoid striking her was due to some want of ordinary care on the part of the defendant or its servants. It is a mere commonplace of the law to say that negligence is not presumed. The party asserting it must prove its existence by a preponderance of evidence. Nevertheless, the court instructed the jury as follows: "It is a rule of law in this state that when the thing which causes an accident is shown to be under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence, in the absence of any explanation by the defendant that the accident arose from want of ordinary care. . . .

"In further explanation of this rule of law, applying it only to the first cause of action, you are instructed that if the plaintiff has proved by a preponderance of evidence that at the time and place mentioned in the complaint she was lawfully on the track of the defendant's street railroad, that while thereon she was run over by a street-car passing along said track and was injured thereby as alleged in the complaint, and that the said car was managed, operated, and controlled entirely by the defendant, then the plaintiff has made out a *prima facie* case, and from such circumstances, if they have been proved, the law presumes that the defendant was negligent and the burden is then cast upon the defendant to show that it was not negligent or careless or reckless in the operation of said car."

By this instruction the court sought to define and apply to this case the doctrine of *res ipsa loquitur.* The rule is well known, and has often been recognized by this court. (*Bush* v. *Barnett,* 96 Cal. 202, [31 Pac. 2] ; *Judson* v. *Giant Powder Co.,* 107 Cal. 549, [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020] ; *O'Connor* v. *Mennie,* 169 Cal. 217, [146 Pac. 674], and cases cited.) It has, however, no just or proper application to the case of a collision between a street-car and a pedestrian on the street. The presumption of negligence arises only where the occurrence is such as ordinarily does not happen without negligence on the part of the party charged, as, for example, in the case of the explosion of a boiler (*Posey* v. *Scoville,* 10 Fed. 140), or of a powder-mill (*Judson* v. *Giant Powder Co., supra*), or the fall of a workman's tool from a building upon a person on the street. (*Dixon* v. *Pluns,* 98 Cal. 384, [35 Am. St. Rep. 180, 20 L. R. A. 698, 33 Pac. 268].) It is true that, in the first part of the instruction complained of, the court incorporates this condition. But the difficulty is that there is, in a case like this, no foundation in fact for assuming or finding the existence of the condition. As between street-cars and other vehicles or persons on the public streets, neither has a superior right, and neither is bound to exercise a higher degree of care than the other. It cannot be said that "in the ordinary course of things" a street-car does not run into a person on the street if the street-car is properly operated. On the contrary, the mishap is quite as likely to be due to the fault of the person struck, or of some third person, or to some unforeseen and unpreventable cause, as to the negligence of those operating the car. At best, the instruction was inapplicable, and therefore misleading. But, beyond this, the court, when it undertook to amplify the rule and apply it specifically to the facts of the particular case, framed its declaration in such form that the jury must have understood that the plaintiff was not bound to prove negligence on the part of the defendant. It told the jury that such negligence was presumed if plaintiff showed (1) that she was lawfully on the track, (2) that she was run over and injured by a street-car, and (3) that said car was managed and controlled by the defendant. That she had a lawful right to be on the track, in the path of an approaching car, was not questioned. In fact, the court specifically instructed the jury that plain-

tiff was entitled, equally with the defendant, to go upon or across the street wherever she pleased, and that defendant had no superior right in the space between the tracks, except the part where its cars actually were. Nor was it disputed that the cars running on the track were under the control and management of the defendant company. All, then, that the plaintiff was, by this instruction, required to show was that she was run over and injured by one of the defendant's cars. In effect, the instruction made mere proof of the accident or injury suffice to impose on the defendant responsibility for such injury. This is not the law. (36 Cyc. 1582; *Hot Springs St. R. Co.* v. *Hildreth,* 72 Ark. 572, [82 S. W. 245]; *Boyd* v. *Boston E. R. Co.,* 224 Mass. 199, [112 N. E. 607].)

We have, in a number of cases, held that a presumption of negligence arises where a *passenger* on a car of a common carrier receives injury from the operation of the car. (*Bush* v. *Barnett,* 96 Cal. 202, [31 Pac. 2]; *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 558, [55 Pac. 324]; *Osgood* v. *Los Angeles Traction Co.,* 137 Cal. 280, [92 Am. St. Rep. 171, 70 Pac. 169]; *Housel* v. *Pacific El. Ry. Co.,* 167 Cal. 245, [Ann. Cas. 1915C, 665, 51 L. R. A. (N. S.) 1105, 139 Pac. 73].) The rule is, in such cases, rested upon the high degree of care required of a carrier toward its passengers, and the defendant's greater ability to show the causes of the accident. But even in actions by passengers, the rule that negligence is presumed from the fact of injury is not universal. (*Wyatt* v. *Pacific El. Ry. Co.,* 156 Cal. 170, [103 Pac. 892].) At any rate, the reasons justifying the rule in such cases do not exist here.

It cannot be said that this was an isolated instruction, or that its effect was cured by other parts of the charge. On several occasions, in instructing the jury, at defendant's request, that the plaintiff must establish negligence by a preponderance of the evidence, the court was careful to add, as a qualification, a restatement of the very matter we have been discussing.

The expression of our views regarding the nature of the evidence makes it unnecessary to say anything further to show the prejudicial character of the instructions in this regard.

There are many other assignments of error, but we do not think it necessary to discuss them in detail. Most of them relate to points which will probably not be presented on a

second trial. There are, for example, many objections to the offering of evidence by way of rebuttal instead of on the case in chief. Any evidence so offered which was a part of the main case will, presumably, be introduced in proper sequence. So, too, there is no reason to anticipate a recurrence of an alleged attempt by the plaintiff to impeach her own witness. We need not, therefore, inquire whether the course pursued was proper. Certain questions are raised with reference to the pleadings. In so far as they have importance, we may assume that the court below will, before another trial, grant leave to both parties to make proper amendments, and to thus obviate unnecessary obstacles to an examination of the merits. We do not express any opinion regarding the sufficiency of the evidence to establish certain contentions of the respondent, since the testimony on another trial may not be identical with that which has already been given.

One or two suggestions may be made for the guidance of the court and the parties in trying the case anew. In view of the defendant's contentions regarding the plaintiff's conduct in connection with the accident, we think the court should have been more liberal in allowing the defendant to cross-examine her with respect to her movements and actions during the several hours following her departure from her home on the day of the accident, and prior to the occurrence of the accident itself. For like reasons, the defendant should have been allowed to prove her conduct during this period by other witnesses. Evidence on this line was relevant as bearing upon plaintiff's state of mind, and consequently upon the probability of her having attempted to bring the injuries upon herself.

It need, perhaps, hardly be said that plaintiff's father should not have been permitted, over proper objections, to testify that he had seen certain letters written by the plaintiff, and then, without producing the letters or accounting for their absence, to state his conclusion that they evidenced a given state of mind on the part of the writer. Even if the letters themselves had been produced, it was for the jury, rather than the witness, to draw such conclusion.

Plaintiff's instruction 27 should not have been given in the form in which it was proposed. As it reads, it is open to the objection that it is argumentative, and goes too elaborately

into the particular facts relied on by the plaintiff. It is better for the court to state rules of law in general terms, rather than to so elaborate matters of evidence as to come perilously close to, if not over, the line which separates a charge of law from an instruction on the facts.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.