[Civ. No. 33433. Second Dist., Div. Three. Aug. 29, 1969.]

CHARLES R. TRUMAN, Plaintiff and Respondent, v. EDITH H. VARGAS, Defendant and Appellant.

Harold Q. Longenecker and Jean Wunderlich for Defendant and Appellant.

Wadsworth, Fraser, McClung & Dahl and James A. Nickoloff for Plaintiff and Respondent.

Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn and Marvin E. Lewis as Amici Curiae on behalf of Plaintiff and Respondent.

SHINN, J.*—About 1 a.m. September 25, 1965, two automobiles collided on Lakewood Boulevard in Los Angeles County at an alley intersection. Mrs. Edith H. Vargas was driving north on Lakewood in a Ford; Arthur Valencia was driving south in a Mustang, Charles R. Truman was his passenger. Lakewood has two northbound and two southbound

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

lanes. Mrs. Vargas turned left, crossed over into the south-bound lanes of Lakewood, and the Ford was struck broadside by the Mustang. Everyoné was injured; fortunately no one was killed. Valencia sued Mrs. Vargas, and she filed a cross-complaint against him; Truman sued Mrs. Vargas. The cases were consolidated for purposes of trial. In the Valencia action the verdict was in favor of Mrs. Vargas on the complaint and in favor of Valencia on the cross-complaint. In the Truman case the verdict was in favor of Mrs. Vargas, and judgment was entered.

Valencia made motions for judgment notwithstanding the verdict and for a new trial. The motions were denied, and the judgment is final. Truman made identical motions, and both were granted. A new trial was ordered only as to damages. Mrs. Vargas appeals from the entire order.

In the answer of Mrs. Vargas to the complaint of Truman she pleaded the contributory negligence of Truman. In the trial she contended that Truman was negligent in two particulars; he called out to a friend, Charles Miller, who was somewhere beside the road, "Hey, Charley"; this caused Valencia to look toward Charley, diverted his attention from his driving and contributed to the collision. The other claim of negligence was that the Mustang had seat belts; Truman knew a belt was available to him and failed to use it.

Evidence of Truman's salutation to Charley, and the fact that Valencia then observed Charley, was received without objection, as was also the evidence that Truman knew about the seat belt and failed to use it. It was not questioned in the trial that these claims of negligence were sufficiently pleaded by Mrs. Vargas. The first claim, of course, was that Truman's negligence contributed to the happening of the accident; the second was that Truman's failure to use the seat belt was a proximate cause of his injuries.

The judgment against Mrs. Vargas on her cross-complaint established that she was negligent which she concedes upon her appeal. The judgment entered on the verdict established that Truman was guilty of negligence which was a proximate cause of the accident and his injuries. The order granting judgment notwithstanding the verdict was a determination that he was not guilty of negligence in either respect.

We have concluded it was not error to grant the judgment notwithstanding the verdict but that it was error to grant Truman a new trial upon the issue of damages alone.

Valencia drove out of McDonald's hamburger stand at the corner of Florence and Lakewood which was 461 feet north of the point of the collision. Charles Miller, referred to by counsel as "Old Charley," was a night watchman, otherwise known as a security guard. Valencia testified that as he drove out of McDonald's parking lot Charley was standing close by, obviously within hailing distance, when Truman called to him. Valencia glanced over and saw Charley. In his testimony Charley marked a spot much closer to the accident. He testified he heard the impact and looked toward the intersection. Questioned whether counsel was to understand that he did not see the accident Charley answered, "Yes, I seen it." He then described how, with admirable perspicacity and alert vision, he had seen the Ford coming across at 5 miles per hour and the Mustang going 45-50 miles per hour "about 20 feet, 25 feet, or yards—let's put it 'yards' . . . 25 yards" from the point of impact the first time he looked over at the Mustang, and the Mustang was about 5 yards or 3 feet from the Ford the second time he looked, but from where he stood he could not tell which lane the Mustang was in.

Truman testified he knew the car had seat belts but he did not use one. He called to Charley as Valencia drove from the hamburger stand; he then looked down Lakewood but he did not remember seeing any other cars or how the cars came together. He suffered a fracture of the left kneecap and the right fibula; he was rendered unconscious, but only temporarily. The windshield was broken, and Truman had a small cut. Valencia testified he was not using his seat belt; he was thrown against the steering column and the windshield and sustained severe injuries.

The grounds of appeal are the following:

1. It was error to grant the motion of Truman for judgment notwithstanding the verdict.

2. The jury could have found Truman guilty of contributory negligence in distracting the attention of Valencia from his driving.

3. Truman was guilty of contributory negligence as a matter of fact in failing to use his seat belt.

4. It was error to preclude counsel for Mrs. Vargas from arguing that the failure of Truman to use the seat belt was a proximate cause of his injuries and in instructing the jury that evidence of that fact was not to be considered.

Point 5 relates to a possible retrial of the issues of damages and the questions that may arise in connection with the failure of Truman to use his seat belt.

■ The court expressed the view that if anyone was at fault in connection with the salutation to Charley it was Valencia, not Truman. We are of the same view. Truman's casual salutation to Charley, whether at the McDonald driveway, or at some other indefinite point when the car was traveling 45 to 50 miles per hour, was in no sense a suggestion to Valencia that he look toward Charley. By its order, the court properly held, as a matter of law, that Truman was not guilty of conduct in this respect which contributed to the accident.

The question of the failure of Truman to use the seat belt as a proximate cause of his injuries is altogether another matter.

After Mrs. Vargas had testified under section 776 of the Evidence Code, Valencia and Truman had given their testimony, and Mrs. Vargas had introduced the testimony of Charley and a Mr. Wallace, the judge mentioned his practice of instructing the jury prior to argument and proceeded to discuss with counsel his proposed instructions. Instructions upon negligence and proximate cause were considered with special attention to the failure of Truman to use a seat belt. The judge and Mrs. Vargas' attorney exchanged views upon this subject. The judge expressed the opinion there was no evidence of any conduct of Truman which contributed to the occurrence of the accident; Mrs. Vargas' attorney disagreed, claiming that the speed of the Mustang would be an issue. The discussion of this point was perfunctory. Mrs. Vargas' attorney also claimed the failure to use seat belts was negligence as a matter of law. The judge pointed out the difference between the failure to use seat belts as a cause of the accident and as a cause of the injuries. His views were expressed in part as follows: "Now, if, we will say, a man is riding in a car equipped with seat belts and he doesn't put his seat belt on and there is an accident and he is thrown out into the street and another car runs over him, why, that could be submitted to the jury on their common knowledge as to whether or not the non-wearing of a seat belt was a proximate cause of the injuries he suffered.

"Now, unless the non-wearing of a seat belt is a proximate cause or an aggravating cause of injuries, then the fact that he was negligent is of no consequence, and in order to deter-

mine whether the non-wearing of a seat belt is a proximate cause of more severe injuries, you have to have testimony on it. That testimony would have to be by somebody who would be qualified to testify as to such matters."

Mrs. Vargas' attorney disagreed; he had tried one case in which he got an instruction on the failure to use a seat belt without the use of expert testimony. Thus the attorney was clearly put on notice that, in the absence of expert testimony that the failure of Truman to use a seat belt was a contributing cause of his injuries, the question whether he was negligent in that respect would not be submitted to the jury. Mrs. Vargas' attorney promised to do some research on the subject, but he eventually elected to rely upon Truman's failure to use a seat belt as negligence without the use of expert testimony as to what the consequences would probably have been if the seat belt had been used.

Mrs. Vargas then introduced the testimony of one expert witness who was an authority in the reconstruction and analysis of automobile accidents. He had examined and photographed the damaged cars and had visited the scene of the accident. During the trial, using photographs of the damaged cars, he gave his opinion as to the particulars of the accident, the speed of the Mustang 40-45 miles per hour, the Ford 5 or 6 miles per hour, information as to distances traveled by the cars, their elapsed times in seconds and the exact manner in which they came together. In view of the extensive experience of the witness as an expert in the field of automobile accidents it would appear that he was qualified to express an opinion with respect to the consequences of the failure of Truman to use the seat belt.

After the evidence was in and the instructions were again being discussed with counsel, the trial judge announced he would instruct the jury in Truman's case to entirely ignore the matter of seat belt evidence, and he admonished the defendant's attorney he must not argue or mention to the jury the matter of seat belts. He gave the jury such an instruction. He explained to counsel in chambers and also to the jury his view that the consequences of the failure to use a seat belt could be proved only by the testimony of expert witnesses, and since Mrs. Vargas had produced none, she could not claim Truman was negligent in failing to use his belt. During argument to the jury the attorney for Mrs. Vargas remarked there was a difference of opinion between the judge and himself (which the jury already knew), but he

was promptly interrupted by the judge; the attorney said he only wished to tell the jury why he had not called an expert witness, but was admonished not to mention the subject again, and he did not.

Appellant not only assigns the order appealed from as error but she points out that upon a retrial the major question would be whether the failure of Truman to use his seat belt was negligence which contributed to his injuries. She asks us to indicate some guide lines for the trial of that issue, not only in this case but for guidance in other cases involving the use of seat belts. She would like to have our opinion whether expert testimony is required to prove the consequences of the failure to use seat belts. There is only one answer we can give to this request. ■ In every case the court must be guided by the general rules governing the use of expert testimony. If the fact sought to be proved is one within the general knowledge of laymen, expert testimony is not required; otherwise the fact can be proved only by the opinions of experts.

There will be an infinite variety of circumstances in which the question will arise whether expert testimony will be legally necessary or merely helpful in casting the greatest possible light upon the problem. Expert testimony should not be required to prove that one who is firmly strapped down by his seat belt will not be thrown out of the car. However, the car may be damaged in a manner that would require the use of expert testimony to prove whether a driver who was thrown out and killed would have been seriously injured if he had been held in his seat by a seat belt. (See *Mortensen* v. *Southern Pac. Co.*, 245 Cal.App.2d 241 [53 Cal.Rptr. 851].) No two accidents will be exactly the same. Each will have its own distinctive problems.

■ As to the case in hand we hold that it was a question of fact whether in the exercise of ordinary care Truman should have used the seat belt and that this question should be answered from a consideration of all the circumstances in evidence and any expert testimony as to the efficacy of seat belts, insofar as the same was known, or in the exercise of ordinary care would have been known to Truman.

■ We hold that upon the facts of this case the trial court correctly ruled that it was not for nonexpert minds to determine what the consequences to Truman would have been if he had been using a seat belt.

The Mustang left no skid marks. A court or jury could find it was traveling about 40 miles per hour and was brought to a

sudden standstill. From what injuries would Truman have been saved if he had been using a seat belt? Projected forward by the great force caused by the collision what would have been the effects upon his body if he had been wearing the seat belt? The nonexpert could only guess. We will not undertake to enumerate the factors that would be considered by physicists and other experts in answering these questions. We are not certain they would all agree in their opinions but expert opinions are essential to an informed and intelligent determination as to these critical facts.

█ We also hold it was error to limit the issues upon a retrial to the question of damages. With respect to the question of the liability of Mrs. Vargas for damages the seat belt phase of the case has been eliminated by the order under appeal. The only tenable reason for removing this issue upon a retrial would be that even if Truman's failure to use the seat belt was a proximate cause of his injuries, such conduct on his part would not constitute a defense to a claim for damages. That was not the ruling in the trial. The court merely held the defense was not proved and removed the issue from the jury for that reason. But a new trial has been granted, and the fact that the defense was not proved in the first trial does not justify its exclusion in a retrial. The implied finding of the jury was that Truman was negligent in calling out to Charley, and this finding alone, was the basis of the verdict. Perish the thought that the jury ignored the court's command and found Truman guilty of negligence in failing to use the seat belt. The new trial was properly granted for the reason that Truman was not guilty of negligence which contributed to the accident. It was not granted because of supposed error of the jury in finding Truman at fault in failing to use the seat belt; there was no such implied finding. The issue was withdrawn from the jury because of the mistake of Mrs. Vargas' attorney in refusing to make use of expert testimony but that mistake should not carry over into a retrial. New trials are usually granted for the mistakes and errors in the trial, and unless repeated they should be forgotten.

Upon a retrial the court or jury will determine whether in the exercise of ordinary care Truman should have used the seat belt; expert testimony will be required to prove whether Truman would have been injured, and, if so, the extent of the injuries he would have sustained if he had been using the seat

belt; the burden of going forward upon this issue will be upon Mrs. Vargas.

The order appealed from is affirmed insofar as it determines that Truman was not guilty of negligence which contributed to the accident; Mrs. Vargas should be permitted to amend her answer if she chooses to do so. The order granting Truman a new trial is modified by striking therefrom the provision that a retrial will be limited to the issue of damages, and as modified the order is affirmed; no costs on appeal to either party.

Cobey, Acting P. J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 22, 1969. Mosk, J., was of the opinion that the petition should be granted.