[No. B172568. Second Dist., Div. Four. Oct. 25, 2004.]

RAMON LARA, Plaintiff and Appellant, v.
ROBERT CHARLES NEVITT, Defendant and Respondent.

456

COUNSEL

Rancano & Rancano and David C. Rancano for Plaintiff and Appellant.

Barry Bartholomew & Associates and Kathryn Albarian for Defendant and Respondent.

**OPINION**

**GRIMES, J.**—Appellant, a long-distance trucker, was the successful plaintiff in a personal injury case arising from a motor vehicle accident but claims there was no substantial evidence to support the jury's finding that he was 50 percent at fault for failing to wear a safety restraint while asleep in the sleeper berth of the truck, and the unjust verdict was the result of (1) instructional error and (2) jury misconduct in rendering a quotient verdict. We find the court did not err in giving an instruction on the seat belt defense, and the jury did not arrive at a chance or quotient verdict.

## FACTUAL BACKGROUND

Plaintiff Ramon Lara (Lara) was asleep in the sleeper berth of his son's big rig truck as the son drove on the highway. Defendant Robert Nevitt (Nevitt) lost control of his car and collided with the truck. Plaintiff's son, Victor Lara (Victor), was driving 55 miles per hour, and though he hit the brakes hard enough to lock them up, he was unable to avoid the collision. Lara was not wearing a seat belt, and he was thrown forward, striking his head and shoulders against cabinets in the sleeping berth.

Nevitt's defense rested largely on Lara's negligence in failing to wear a seat belt or other safety restraint. Nevitt elicited testimony from Lara and his son Victor that there were straps or belts that went across the bed in the sleeper berth. At Nevitt's request, the trial court gave a modified version of BAJI 5.90, the seat belt defense instruction.

The jury awarded Lara $19,500 in economic damages and $19,500 in noneconomic damages but found he was 50 percent at fault. Lara contends there was no substantial evidence to support the giving of an instruction on the seat belt defense or to support the jury verdict that he was negligent, and the damage award was the result of an improper chance or quotient verdict. We find no merit to these claims of error and affirm the judgment.

## DISCUSSION

### I

*There Was Substantial Evidence to Support the Verdict and No Expert Testimony Was Required in the Circumstances of this Case*

Lara contends there was no substantial evidence to support the jury's finding that he was 50 percent at fault for his injuries. First, he contends that

Nevitt did not prove the seat belt in the sleeper berth worked. Both Lara and his son Victor testified that the sleeper berth was equipped with a safety restraint at the time of the accident. Victor testified that truckers do not ordinarily use the safety restraint when sleeping in the sleeper berth because it is uncomfortable to sleep that way. He explained that the safety restraint in the sleeper berth was "like a seat belt. If you put it around you, you got to put it on real tight; you can't move at all. I mean, it's not comfortable sleeping being tied down." The jury could reasonably infer that the belt worked since Victor explained how it worked, and there was no testimony from which the jury might infer it was not working at the time of the accident.

■ Second, Lara contends there was no evidence that he *should* have worn a seat belt. His son Victor testified that the custom and practice in the trucking industry is that passengers in the sleeper berth do not wear seat belts while they sleep. The California Highway Patrol officer who investigated the accident testified that the law does not require a passenger in the sleeper berth to wear a seat belt. The jury could reasonably conclude that, although truckers do not usually wear restraints in the sleeper berth and there is no law requiring them to wear restraints, nonetheless, it was negligent for Lara not to use the strap when it was available.

Third, he contends it was error to permit Nevitt to call an orthopedic expert to testify that if Lara had been harnessed, it would have been less likely that he would sustain significant neck injuries. When asked to quantify the percentage difference in risk of injury if Lara had worn a seat belt, the expert said he would be "totally winging it." Lara contends there was no foundation for the expert's opinion that he would have been less injured if he had worn the safety belt, because the expert had no expertise in seat belts, and Nevitt offered no expert testimony as to the force generated in the accident, or the effect of such force on a sleeping person who is restrained versus unre-strained, or the mechanics of Lara's injury. He also contends that, in the absence of competent expert testimony, there was no evidentiary basis for the jury finding his own negligence was the cause of 50 percent of his damages.

■ Victor testified that he was driving at 55 miles per hour when he hit the brakes so hard that they locked, which knocked his father around in the berth with sufficient force to hurt him. He also testified that the restraint in the sleeper fit tightly and prevented a sleeping passenger from moving at all. In this day and age in southern California, where virtually every citizen either drives or rides in a vehicle, no expert testimony is necessary to support the reasonable inference that Lara would have suffered less injury if he had been wearing a seat belt. Expert testimony is not always required to prove that

failure to use a seat belt may cause at least some, if not all, of plaintiff's claimed injuries. (*McNeil v. Yellow Cab Co.* (1978) 85 Cal.App.3d 116, 118 [147 Cal.Rptr. 733] [the question whether the absence of seat belt restraint constituted a proximate cause of plaintiff's injuries "was one of such common knowledge that persons of ordinary education could reach an intelligent answer"].)

■ Depending on the facts of the case, expert testimony may be necessary for the jury to distinguish the injuries that Lara unavoidably sustained in the collision from the injuries he could have avoided if he had worn a seat belt. The seminal case in California on the seat belt defense is *Truman v. Vargas* (1969) 275 Cal.App.2d 976 [80 Cal.Rptr. 373]. That opinion makes clear that the question whether expert testimony is required to submit the seat belt defense to the jury must be answered by applying "the general rules governing the use of expert testimony. If the fact sought to be proved is one within the general knowledge of laymen, expert testimony is not required; otherwise the fact can be proved only by the opinions of experts." (*Id.* at p. 982.)

■ In the circumstances of the *Truman* case, the court found expert testimony was necessary, but reasoned that, "There will be an infinite variety of circumstances in which the question will arise whether expert testimony will be legally necessary or merely helpful in casting the greatest possible light upon the problem. *Expert testimony should not be required to prove that one who is firmly strapped down by his seat belt will not be thrown out of the car.*" (*Truman v. Vargas, supra*, 275 Cal.App.2d at p. 982, italics added.) In this case, Victor testified that a passenger cannot move in the bed in the sleeping berth when strapped in. Although unnecessary, the testimony of the orthopedic expert was helpful to the extent he confirmed the common sense fact that Lara would have a lesser chance of sustaining substantial neck injuries in this accident if he had worn a seat belt.

■ The defendant who asserts comparative negligence on the theory that plaintiff would have sustained specific, lesser injuries if he had worn a seat belt must offer an evidentiary basis for the jury to assign a percentage of negligence to plaintiff and, ordinarily, that will require expert testimony. (*Franklin v. Gibson* (1982) 138 Cal.App.3d 340 [188 Cal.Rptr. 23].) Lara cites *Franklin* for the proposition that Nevitt was not entitled to an instruction on comparative negligence based on the seat belt defense, and there was no substantial evidence to support the jury's apportionment of fault, because no competent expert testimony established the defense. The holding in *Franklin* that defendant had the burden to prove "what injuries plaintiffs would have

sustained, according to expert testimony, if the seat belts had been used," is informed and limited by the facts of that case.[1] (*Id.* at p. 344.)

The plaintiffs in *Franklin* suffered severe, complex and permanent injuries that were difficult to apportion between the collision and the failure to wear seat belts. The only evidence on the issue of plaintiffs' comparative negligence was that they were not wearing seat belts. The defendant neither proved there were seat belts available to plaintiffs in their car nor what the consequences to plaintiffs would have been if they had been wearing seat belts. Thus, the *Franklin* court reversed the jury's apportionment of liability to plaintiffs because there was no evidence that certain injuries were aggravated or made worse by plaintiffs' failure to use available seat belts, and the jury's apportionment of negligence to plaintiffs was sheer guesswork. *Franklin*, however, did not depart from *Truman* nor establish a new rule requiring the use of expert testimony in every motor vehicle personal injury action involving a seat belt defense regardless of the circumstances of the accident and the testimony of the lay witnesses.

Here, expert testimony was not necessary since the jury was not required to distinguish among injuries in terms of cause without a factual basis. The orthopedic expert admitted he would be guessing if he were to quantify to what degree Lara's injuries were aggravated or made worse because he was not wearing a seat belt. But the absence of such an expert opinion is immaterial in light of Victor's testimony that a sleeping passenger cannot move *at all* when strapped in the seat belt. The jury could infer using common sense that if he could not have moved at all, Lara would not have rolled around and hit the cabinets.[2]

The evidence supported the giving of an instruction on the seat belt defense. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298].) The modified version of BAJI No. 5.90 requested by Nevitt and given by the court was correct and not argumentative.

---

[1] "It is axiomatic that an unnecessarily broad holding is 'informed and limited by the fact[s]' of the case in which it is articulated. [Citation.]" (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 790, fn. 11 [11 Cal.Rptr.3d 222, 86 P.3d 290].)

[2] On the other hand, of course, if Nevitt had not collided with Lara's truck, Lara would not have rolled around then either. Thus, it made perfect sense for the jury to apportion liability 50/50 between Lara and Nevitt.

■ The court instructed the jury that in deciding whether Lara used ordinary care, they could consider whether Nevitt proved (1) there were passenger restraints in the sleeping berth that worked, (2) a reasonable person would have used them, (3) Lara did not use them, and (4) based on expert testimony, Lara's injuries would have been avoided or less severe if he had used the restraints.[3] The key defense theory was that Lara was largely responsible for his injuries for failing to use the straps on the bed in the sleeping berth. The court properly gave this instruction in addition to the general instructions on negligence. Lara had no right to insist that Nevitt argue Lara's negligence based solely on the court's instructions on general principles of tort law without an appropriate instruction on the elements of comparative negligence embodied in the seat belt defense.

## II

### The Jury Did Not Reach a Chance or Quotient Verdict

Lara asserts the trial court improperly denied his motion for new trial on the ground that the verdict was adopted by means of a quotient verdict in violation of Code of Civil Procedure section 657. The court had read BAJI No. 15.33 to the jury, instructing the jury not to agree in advance on an average and to make that the verdict without further consideration. After deliberating a few hours, the jury reported it was deadlocked. The court told them to take a lunch break, relax, and resume deliberations afresh after lunch. After a few more hours, the jury returned its verdict, awarding $19,500 in economic damages and $19,500 in non-economic damages. The jury was polled, and nine members affirmed that was their verdict.

Long ago, our Supreme Court denounced quotient verdicts in *Dixon v. Pluns* (1893) 98 Cal. 384 [33 P. 268]. The *Dixon v. Pluns* court reversed for new trial due to the chance nature of the quotient verdict in that case, explaining: "[E]ach juror agreed that a definite amount should be the verdict of the jury, at a time when he had no knowledge whatever as to what the amount should be, for it had not yet been computed. No person even knew

---

[3] The court's instruction eliminated from BAJI No. 5.90 any reference to Vehicle Code section 27315, which requires passengers 16 years old or over to wear seat belts. Vehicle Code section 27315, subdivision (e) exempts passengers in sleeper berths from the mandatory seat belt law, though the jury here was not told that. The common law principles of comparative negligence that govern the seat belt defense derive from *Truman v. Vargas, supra,* 275 Cal.App.2d 976, which was published in 1969. California did not enact a mandatory seat belt law until 1985. The seat belt defense does not depend on a Vehicle Code violation nor is it eviscerated by a Vehicle Code exemption from the requirement to wear seat belts. BAJI No. 5.90 does not establish a duty to wear seat belts derived from Vehicle Code section 27315 but sets forth the elements of Lara's comparative negligence that Nevitt must prove to show that in the exercise of ordinary care Lara should have used the seat belt available to him.

the figures upon which the computation would be made. If the estimate of each juror is before the eyes of the others when the agreement is made, then no element of chance will be found in the result, for it would be a mere matter of mathematical computation; but without a knowledge of these estimates, the character of the verdict will be as entirely unknown to the jurors as though the whole matter were decided by the casting of a die, or the tossing of a coin. In the casting of a die, or the tossing of a coin, justice has an equal chance with injustice, but under the system here considered, one unscrupulous and cunning juror always has the power to defeat justice by increasing or decreasing the amount of the verdict in proportion as he places his estimate at an unconscionably high or low figure. In the casting of a die the chance of winning or losing is dependent upon the face of the die that presents itself after the cast. In arriving at a verdict in the manner here practiced, the chance of the respective parties, plaintiff and defendant, to secure the verdict is entirely dependent upon the sum total of the estimates made by the various jurors, and that sum total is as uncertain and unknown to the jurors at the time the agreement is made as the result of the cast is unknown to the gamester." (*Dixon*, at p. 387.)

Similarly, in *Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058 [18 Cal.Rptr.2d 106], the court reversed the portion of the award that was an improper quotient verdict because the jurors agreed in advance to be bound by the average of their respective views of a proper damages award without further deliberation. Unlike here, in *Chronakis* there was no deliberation upon what award would be too high or too low, each juror wrote down a number without the jury having reached a consensus as to what range of figures would be reasonable, and there was no deliberation upon the average of the 12 unrestrained amounts that were submitted by each juror, totaled, and divided by 12. (*Id.* at pp. 1065–1067.)

In contrast, here, the two jurors who submitted declarations in support of Lara's motion for new trial stated that, to break their deadlock, the jury agreed that each juror would submit a number greater than zero and less than $100,000 and take an average. In effect, then, they agreed that to award nothing would be unconscionably low, and to award $100,000 or more would be unconscionably high. The jury then examined the numbers submitted and reached a new consensus, modifying their earlier agreement that a reasonable award would be in the range of zero to $100,000. They decided to drop the lowest number submitted, $10,000, and the highest number submitted, $90,000, thus preventing any juror from unduly deflating or inflating the award by submitting an unreasonably low or high number. The jury then added up the remaining eight numbers and divided the total by eight.

■ The trial court properly denied the motion for new trial on the ground that Lara did not demonstrate the jury reached a chance or quotient verdict.

The jury agreed on a high and a low figure and, before calculating an average, they further agreed to adjust downward the high figure and to adjust upward the low figure. There is no evidence that this average was adopted without further consideration or that the jury agreed at any time to adopt an average and abide by the agreement without further discussion or deliberation. Both jurors declared that all 12 members of the jury agreed on the award but when polled in open court, three jurors said that was not their verdict, which suggests there was no agreement to adopt an average and be bound by it. "[T]here is no impropriety in the jurors making an average of their individual estimates as to the amount of damages for the purpose of arriving at a basis for discussion and consideration, nor in adopting such average if it is subsequently agreed to by the jurors . . . ." (*Ham v. County of Los Angeles* (1920) 46 Cal.App. 148, 153–154 [189 P. 462].)

## DISPOSITION

The judgment is affirmed.

Hastings, Acting P. J., and Curry, J., concurred.