Filed 8/3/23  Wise v. Drulias CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ELIZABETH SCOTT WISE<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEAN W. DRULIAS, as Administrator, etc.,<br><br>Defendant and Appellant. | B316975<br><br>Los Angeles County<br>Super. Ct. No.<br>19LBCV00372 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Michel, Miller, Park, Allen L. Michel and Won M. Park for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# INTRODUCTION

Elizabeth Scott Wise sued Robert E. Long for damages stemming from Long's exclusion of Wise from her home, which she co-owned with Long and her former spouse, Alfred Wise, Jr. (Alfred). A jury found in Wise's favor on her claims for negligence, negligent infliction of emotional distress, and conversion.

Following entry of judgment, Long moved for judgment notwithstanding the verdict (JNOV) and a new trial. At a hearing on his post-trial motions, the trial court effectively denied the JNOV motion, but ruled Long's motion for a new trial would be granted unless Wise accepted a remittitur reducing her damages from $516,050 to $344,950. Subsequently, Wise accepted the remittitur, and an amended judgment reflecting her reduced damages award was entered in her favor. Long appealed.

While this appeal was pending, Long died. Subsequently, Dean W. Drulias was appointed the administrator of Long's estate and substituted for Long as the appellant in this appeal.

On appeal, Drulias contends Long's JNOV motion should have been granted or, in the alternative, a new trial should have been granted because: (1) Wise's negligence claims failed as a matter of law; and (2) Wise was not entitled to emotional distress damages on her negligence claims. For the reasons discussed below, we reject Drulias's arguments. Accordingly, we affirm.

BACKGROUND

## I.  Factual Background[1]

In March 2016, Long purchased a single-family home in Signal Hill for Alfred and Wise to live in. Alfred and Wise moved into the property soon after it was purchased. Long never resided at the property. Later, by way of a quitclaim deed signed and recorded in June 2016, Long conveyed equal ownership interests in the property to himself, Alfred, and Wise.

In November 2016, Alfred moved out of the property and filed for divorce from Wise. Wise continued to reside at the home.

In early September 2018, Wise agreed to work as a live-in nanny for her grandchildren in Connecticut. Her employment contract stated her position would begin on September 14, 2018, and terminate on June 30, 2019. While working as a nanny, Wise kept furniture at her home, maintained her own bedroom, and returned to the property at least once per month, for as long as a week at a time.

In February 2019, Wise agreed to lease a bedroom in the home to Edouard Knighton[2] beginning March 1, 2019. That same

---

1    The following undisputed facts are taken from: (1) the settled statement prepared by Long and certified by the trial court pursuant to California Rules of Court rule 8.137; (2) the exhibits admitted into evidence at trial included in the appellant's appendix filed in this case; (3) the declaration of Edwin Fahlen in support of Long's post-trial motions; and (4) the declaration of J. Owen Murrin in support of Wise's opposition to Long's post-trial motions.

2    Knighton was a plaintiff in the underlying lawsuit and a respondent to this appeal. The parties settled the appeal with respect to Knighton on March 13, 2023. Subsequently, however,

month, Long agreed to rent the home exclusively to Daniel Reyes. Sometime before February 28, 2019, while Wise was not at the property, Long changed the locks to the property, and Reyes began residing at the home.

When Knighton went to the home on February 28, 2019, to move in, he discovered the keys provided by Wise did not work. Knighton also observed a broken door lock on the ground. At the time, Wise had numerous personal items, including furniture, kitchenware, bedding, rugs, towels, and appliances, inside the home.

In March or April 2019, Wise learned Reyes was residing at the home pursuant to a lease agreement with Long. On April 6, 2019, Wise attempted to enter the property, but was unable to do so due to Reyes's presence. Wise did not regain possession of the property until January 25, 2020, after prevailing in an unlawful detainer action against Reyes.

## II.    Procedural Background

In June 2019, Wise sued Long for the following ten causes of action: trespass (first cause of action); conversion (second cause of action); negligence (third cause of action); violation of Civil Code section 789.3, subdivision (b) (fourth cause of action); intentional or negligent infliction of emotional distress (fifth cause of action); wrongful eviction (sixth cause of action); negligent supervision, hiring, and retention (seventh cause of

_____

the parties did not file a request for dismissal or notice of abandonment in the time required by California Rules of Court, rule 8.244(a)(3). Therefore, on May 15, 2023, we dismissed the appeal with respect to Knighton as abandoned and directed each side to bear their own costs on appeal under California Rules of Court, rule 8.244(a)(4).

4

action); breach of contract (eighth cause of action); specific performance and/or injunctive relief (ninth cause of action); and declaratory relief/partition (tenth cause of action).[3]

The jury trial in this case began on August 10, 2021. Two days later, Wise rested and Long moved for nonsuit. The trial court granted the motion with respect to Wise's first, fourth, sixth, seventh, and ninth causes of action. It also granted the motion with respect to Wise's claim for punitive damages. Sometime before deliberations, Wise abandoned her tenth cause of action, as she did not include the claim on the general verdict form agreed to by the parties and provided to the court.

The jury reached a verdict on August 13, 2021, finding in favor of Wise and against Long on Wise's claims for negligence, negligent infliction of emotional distress, and conversion. It found against Wise and in favor of Long on her claims for breach of contract and intentional infliction of emotional distress. The verdict form reflects the jury awarded Wise $115,900 in past economic damages, $55,200 in future economic damages, $289,750 for past noneconomic loss, including physical pain and mental suffering, and $55,200 for future noneconomic loss, including physical pain and mental suffering. The sum of these amounts is $516,050. However, on the final line at the bottom of the verdict form labeled "TOTAL[,]" the amount listed by the jury was $344,950.

On August 26, 2021, the trial court entered judgment on the verdict. The judgment recounted the jury's findings of liability set forth on the verdict form and awarded Wise $516,050

---

3      Wise also asserted her first, second, third, and fourth causes of action against Reyes. At some point prior to entry of judgment, Wise settled her claims with respect to Reyes.

5

in damages, i.e., the accurate sum of the four line items of damages listed on the verdict form.

On September 10, 2021, Long moved for JNOV and for a new trial. At the hearing on the motions held on October 19, 2021, the trial court rejected Long's contentions disputing his liability for negligence, as well as his argument challenging Wise's entitlement to damages for emotional distress, and effectively denied the JNOV motion. The court ruled, however, that due to the confusing nature of the jury's responses on the general verdict form relating to Wise's total damages, it would grant Long's motion for a new trial unless, by October 29, 2021, Wise accepted a remittitur reducing her total damages to $344,950.

On October 27, 2021, Wise filed a document accepting the trial court's remittitur and consenting to its reduction of her damages award. The next day, the court set aside the prior judgment entered in August 2021 and entered an amended judgment awarding $344,950 in damages to Wise. Long appealed from the amended judgment.

In June 2022, while this appeal was pending, this court was informed Long had passed away. Subsequently, in September 2022, Drulias was appointed as administrator of Long's estate and moved to substitute himself as the appellant in this appeal. This court granted Drulias's motion for substitution in October 2022.

## DISCUSSION

I. **Standards of Review**

"The trial court's power to grant a motion for judgment notwithstanding the verdict is the same as its power to grant a

6

directed verdict. [Citation.] 'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.' [Citations.] On appeal from the denial of a motion for judgment notwithstanding the verdict, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict. [Citation.] If there is, we must affirm the denial of the motion. [Citations.] If the appeal challenging the denial of the motion for judgment notwithstanding the verdict raises purely legal questions, however, our review is de novo." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)

Although not entirely clear, in asserting Long's motion for a new trial should have been granted, Drulias appears to rely on Code of Civil Procedure, section 657, subdivision (6), which permits a new trial where "the verdict . . . is against law." "The jury's verdict was 'against law' only if it was 'unsupported by any substantial evidence, i.e., [if] the entire evidence [was] such as would justify a directed verdict against the part[y] in whose favor the verdict [was] returned.'" (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 906.) Consequently, when evaluating whether the trial court correctly concluded the verdict is not "against law[,]" the appellate court employs the same standard applicable to review of an order denying a motion for JNOV. (See *id.* at pp. 906-907.) In addition, "legal challenges which may be brought by way of section 657, subdivision 6 . . . are not limited to those raised before verdict or judgment." (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15.)

## II. Analysis

Drulias contends the trial court should have granted Long's motion for JNOV or, alternatively, granted a new trial. In support of his position, Drulias argues: (1) Wise's claims for negligence and negligent infliction of emotional distress fail as a matter of law; and (2) Wise was not entitled to "personal injury damages[ ]" on her negligence claims. We address each argument in turn below.

### A. Liability for Negligence

Preliminarily, to provide context for Drulias's arguments disputing Long's negligence liability, we discuss the relevant principles governing the rights and duties of cotenants of real property. "'Cotenancy' is the legal term commonly used to designate ownership by several persons of undivided interests in real property, as opposed to ownership in 'severalty,' which designates ownership by individuals of separate parcels or portions of parcels. The cotenants own the property by one joint title and in one right, and thus have one common freehold." (4 Miller & Starr, Cal. Real Estate (4th ed. 2023) § 11:1, fns. omitted.)

In general, cotenants each "ha[ve] an equal right to possession of the entire property, and no cotenant has a right to the exclusive possession of the property as against another cotenant." (4 Miller & Starr, Cal. Real Estate, *supra*, § 11.2, fns. omitted.) Therefore, "[a]s between the cotenants, each has the right to enter on and to occupy the entire property, and no cotenant has the right to exclude another cotenant from any portion of the property." (*Ibid*, fns. omitted.) "Regardless of the general rule that precludes exclusive possession by one cotenant,

8

a cotenant may become a tenant of the other cotenants by agreement." (4 Miller & Starr, Cal. Real Estate, *supra*, § 11:4, fns. omitted.)

In addition to having an equal right to possession of the entire property, "[e]ach cotenant may lease or license his or her right to occupy and use the common property to a third person to the same extent that it could be occupied and used by the lessor cotenant. However, a cotenant who does not join in a lease is not bound by its terms conferring the right of exclusive possession to the lessee. [¶] The other cotenants cannot cancel the lease or license; nor can they recover exclusive possession of the entire property. They are only entitled to the enjoyment of possession with the lessee or licensee, and if they dispossess the lessee, they may themselves be liable for trespass." (4 Miller & Starr, Cal. Real Estate, *supra*, § 11.3, fns. omitted.)

With these principles in mind, we direct our attention to Drulias's arguments challenging Long's liability for negligence.

## 1. Statutory Claim of Ouster as Exclusive Means of Recovering Damages

Drulias first contends Wise's negligence claims fail because a cotenant of property who has been excluded therefrom by another cotenant can only recover damages arising from the exclusion by asserting a claim of ouster under Civil Code section 843, subdivision (c), against the excluding cotenant. He therefore asserts a claim for negligence "is unavailable as a matter of law in [these] circumstances." In support of his contention, Drulias relies primarily on an excerpt of Miller and Starr's treatise on California Real Estate and *Locke v. Peters* (1884) 65 Cal. 161.

Drulias's argument is unavailing because it is not supported by the authorities cited. With respect to the Miller and

9

Starr treatise, Drulias correctly observes that section 11.4 states, in relevant part: "A cotenant who is not in possession [of the property] may only recover the rents and profits, or the value of possession, from the cotenant in possession when there has been an ouster excluding the cotenant from possession, or when the other cotenant's occupancy was pursuant to an agreement to share the rents and profits from their property. Absent an agreement or an ouster, a cotenant out of possession has no right to recover the rental value of the property from a cotenant in possession." (4 Miller & Starr, Cal. Real Estate, *supra*, § 11.4, fns. omitted.) In so doing, the treatise clarifies when a cotenant who is not in possession of the property may recover rents and profits from a cotenant in possession. (See *ibid.*) Nothing in that section states or otherwise suggests that a claim for ouster is a cotenant's sole means of obtaining monetary relief when he or she has been excluded from the property by another cotenant. (See *ibid.*) In addition, Drulias does not cite—and we could not locate—any other portion of the treatise stating a cotenant may not assert a negligence claim against another cotenant where the latter has excluded the former from the property.

*Locke v. Peters*, *supra*, 65 Cal. 161, likewise does not support Drulias's argument. There, our Supreme Court held that a plaintiff asserting a claim for ejectment[4] may only recover

_____

4      "The action of ejectment is a possessory action in which the plaintiff must show himself entitled to the present possession, and that he has been deprived thereof." (*Montgomery v. Santa Ana & W.R. Co.* (1894) 104 Cal. 186, 197.) "Despite the simplicity of the action of ejectment, it has been largely superseded by two other remedies[,]" namely, statutory actions for quiet title and unlawful detainer. (5 Witkin, Cal. Procedure (6th ed. 2023) Pleading, § 636.)

damages where he or she has obtained "a judgment for recovery of the possession of the demanded premises." (*Locke v. Peters*, *supra*, at pp. 162-163; see also *Nathan v. Dierrsen* (1913) 164 Cal. 607, 609-610 [citing *Locke v. Peters*, among other cases, to show "the established rule at common law that an action against a wrongful disseisor [(i.e., someone who wrongfully dispossesses another of his or her real property)] for mesne profits could not be maintained except by a plaintiff who[,] . . . at least, had recovered a judgment in ejectment"].) Accordingly, the court reversed the judgment awarding the plaintiff $500 in damages (*Locke v. Peters*, *supra*, at pp. 162-163), as the jury's verdict did not reflect "adjudication of the plaintiff's right of possession, or with reference to the *ouster*, or as to [the] defendant's alleged withholding of the possession." (*Id.* at p. 162, original italics.) The court did not address whether a cotenant is limited solely to a claim of ouster to recover damages for injuries allegedly stemming from his or her exclusion from the property by another cotenant. (See *id.* at pp. 161-163.) It did not address the availability of a negligence claim. (See *ibid.*)

Having concluded Drulias's argument is unsupported by the authorities on which he relies, we turn to the policy argument raised in support of his position. On this point, Drulias asserts that if a cotenant "is permitted to sue [his or] her cotenant for negligence, the latter's otherwise absolute right to concurrent possession (which includes the right to lease without the consent of the other [cotenant] . . . ) could be stripped away completely without compensation. Rather than exercise the right freely, the owner of it would never be certain if he or she might be subject to a suit for negligence merely by leasing the property to a third

11

person, even though the [ownership interest] expressly allows such conduct regardless of the consent of the other [cotenant]."

Drulias's argument is meritless because it misconstrues the nature of the wrong on which Wise's negligence claims are based. Wise did not—as Drulias suggests—allege Long was negligent simply because he leased the property to Reyes without her consent. Instead, the record reflects that throughout the underlying case, Wise asserted Long was negligent because he dispossessed her of her home, from February 2019 to January 2020, by changing the locks and promising Reyes the right of exclusive possession of the premises for the duration of his lease. Because Wise does *not* seek to impose liability based solely on Long's exercise of his right to lease the property to a tenant of his choosing, we are not persuaded that permitting a negligence claim on the facts in this case will essentially "strip[ ] away" that right from other co-owners of property, as Drulias contends.

Accordingly, we reject as unsupported Drulias's contention that, as a matter of law, Wise could not assert a negligence claim against Long on the facts in this case.

### 2. Whether Wise Proved the Essential Elements of Duty and Breach

Next, Drulias argues that even if Wise is not prohibited from proceeding on a theory of negligence against Long, her claims fail because she did not establish a prima facie case for negligence. Specifically, Drulias asserts Wise failed to satisfy the elements of duty and breach. (See *Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 687 ["The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages"].)

12

### a.   Duty

Although not entirely clear, Drulias appears to contend Wise cannot satisfy the element of duty because, as a matter of law, a cotenant of property does not owe a duty of care to other cotenants when exercising his or her right to lease the property to a third-party. As discussed below, we reject this argument for three reasons.

First, the argument has been forfeited because it was not adequately presented and/or developed in the trial court. In addressing whether cotenants of property owe a duty of care to one another in his motion for JNOV, Long perfunctorily asserted: "[W]hile co-owners of property may have duties to one another, a duty of care (i.e., to not act negligently) is not one recognized in case law." (Italics omitted.) In support of this point, Long cited *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), but did not explain how that case or any other authorities applied to support his contention. Similarly, in his motion for a new trial, Long made a brief, conclusory assertion he did not owe a duty of care to Wise, and cited to the pages in his JNOV motion discussing the matter. On this record, we conclude Long "did not adequately raise this issue in the trial court and therefore forfeited the issue on appeal." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 384 fn. 6; see also *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 435-436 [conclusory two-sentence argument asserted in the trial court was insufficient to preserve an issue on appeal].)

Second, even if the duty issue had been sufficiently raised in the trial court, Drulias's argument is unavailing because it does not address the issue at the heart of the question of whether a person owes a duty of care to another. He contends *Biakanja,*

13

*supra*, 49 Cal.2d 647, sets forth "the traditional balancing test for determining if one person owes a duty of care to another[,]"and that straightforward application of that test "requires a finding there is no duty of due care[ ]" between cotenants seeking to lease their jointly-owned property to different tenants. This argument, however, misstates and grossly oversimplifies the legal principles governing the existence of duty in California.

In *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764 (*Cabral*), our Supreme Court set forth the principles governing the element of duty in the context of negligence. It stated: "The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .' (Civ. Code, § 1714, subd. (a).) In other words, 'each person has a duty to use ordinary care and is "liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ."' [Citations.] In [*Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*)], this court identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [Citations.] As we have also explained, however, in the absence of a statutory provision establishing an exception to the

14

general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public policy.'" (*Cabral*, *supra*, at p. 771.)

The *Cabral* court then clarified how the *Rowland* factors should be applied. On this point, the Supreme Court stated: "[T]he *Rowland* factors are evaluated at a broad level of factual generality. Thus, as to foreseeability, we have explained that the court's task in determining duty 'is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .' [Citations.] [¶] In applying the other *Rowland* factors, as well, we have asked not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." (*Cabral*, *supra*, 51 Cal.4th at p. 772, italics omitted.)

We acknowledge that, by relying on *Biakanja*,[5] Drulias briefly discusses some—but not all—of the *Rowland* factors, namely, the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. In so doing, however,

---

5      In articulating the considerations that may warrant a departure from Civil Code section 1714, the *Rowland* court cited *Biakanja*, *supra*, 49 Cal.2d 647, among numerous other authorities. (*Rowland*, *supra*, 69 Cal.2d at pp. 112-113.)

15

Drulias does not couch his analysis of those factors in the context of the overarching framework set forth in *Cabral, supra*, 51 Cal.4th at pp. 771-772. Specifically, Drulias does not clearly explain how, on balance, the factors he has discussed justify a categorical "exception[ ] to Civil Code section 1714's general duty of ordinary care" based on "foreseeability and policy considerations[.]" (*Cabral, supra*, at p. 772.)

Finally, Drulias's duty argument is meritless because it misconstrues the dispute giving rise to this case and the wrong on which Wise's negligence claims are based. Drulias's argument rests on his view that this case simply concerns "a . . . situation involving co-owners where one has leased the property to a third party, and the other co-owner wishes to lease or has leased the property to a different party." Wise's claims, however, are not based on a mere disagreement between her and Long over to whom to rent their property. Instead, as discussed above, her claims seek redress for Long's dispossession of Wise of the property for 11 months.

In sum, for the reasons discussed above, we are not persuaded by Drulias's contention that Long did not owe a duty of care to Wise. We therefore conclude Drulias has not shown Long was entitled to JNOV or a new trial based on Wise's failure to satisfy the first element of a prima facie case for negligence.

### b.    Breach

Drulias also contends Wise failed to provide sufficient evidence of breach. Relying primarily on *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689 (*Miller*) and *Truman v. Vargas* (1969) 275 Cal.App.2d 976 (*Truman*), he argues expert testimony was required to show Long's actions fell below the standard of care, as "[t]he proper way for co-owners of

real property to behave toward one another when both have exercised the right to lease co-owned property to a third party is not a matter of common knowledge." Drulias therefore argues that because Wise did not present expert testimony on the issue of breach, she did not establish a prima facie case of negligence.

Drulias's argument is without merit because the cases on which it relies are factually distinguishable from this case. In *Miller*, the appellate court considered whether the plaintiffs were required to present expert testimony showing the defendant, a contractor, failed to exercise due care in building the plaintiffs' home. (*Miller*, *supra*, 8 Cal.3d at pp. 701-702.) In so doing, the court first observed "it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima face case[ ]" when "the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen[.]" (*Id.* at p. 702, italics omitted.) Applying this principle, the appellate court held "nonsuit was justified[ ]" on the plaintiffs' negligence claim because "the jury could not determine from common experience whether [the contractor] had acted negligently . . . ." (*Id.* at p. 704.) It reasoned: "Building homes is a complicated activity. The average layman has neither training nor experience in the construction industry and ordinarily cannot determine whether a particular building has been built with the requisite skill and in accordance with the standards prescribed by law or prevailing in the industry." (*Id.* at pp. 702-703, fn. omitted.)

In *Truman*, the appellate court addressed whether expert testimony was required to establish a car passenger's failure to wear a seatbelt was the proximate cause of the injuries he sustained in an accident. (*Truman*, *supra*, 275 Cal.App.2d at pp. 980, 982.) The court held that, on the facts before it, expert

17

testimony was necessary because "it was not for nonexpert minds to determine what the consequences to [the passenger] would have been if he had been using a seat belt." (*Id.* at p. 982.) In support of this conclusion, the appellate court explained that a "nonexpert could only guess[ ]" about "what would have been the effects upon [the passenger's] body . . . had [he] been wearing the seat belt[ ]" during the car collision giving rise to the case. (*Id.* at p. 983)

As should be obvious, in the cases cited by Drulias, the appellate courts did not determine whether expert testimony was required to establish the element of breach in factual circumstances similar to those presented in this case. They do not address the existence or extent of a duty of care between cotenants. Consequently, we are unpersuaded these cases support Drulias's contention of error. (See *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226 ["The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning"].)

In addition, we reject Drulias's argument because, once again, it rests on an incorrect view of the wrong underlying Wise's negligence claims. According to Drulias, expert testimony was required because a layperson cannot determine whether a cotenant violates the standard of care by leasing the property to a tenant without the consent of his or her cotenant. As discussed above, however, Wise did not—as Drulias suggests—assert Long breached his duty of care simply because he rented the property to Reyes without her approval. Instead, Wise argued Long was negligent because he excluded her from her home for nearly a year by changing the locks to the property, and promising Reyes

18

the exclusive right to reside in the home, without her prior knowledge or consent. Under these circumstances, we are not persuaded that the jury required knowledge of the assertedly complex doctrines governing co-ownership of property to ascertain whether Long's actions fell below the "standard of care . . . of a reasonably prudent person under like circumstances." (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546.) On the contrary, given the facts in this case, we conclude the jury could determine from common experience whether Long had acted negligently.

Therefore, for the reasons discussed above, we reject Drulias's contention that Wise did not prove the element of breach. We therefore conclude Drulias has not shown Long was entitled to JNOV or a new trial based on Wise's failure to satisfy the second element of a prima facie case for negligence.

### B. Entitlement to "Personal Injury" Damages

Drulias argues the trial court should have granted one of his post-trial motions because the jury erroneously awarded Wise "personal injury damages" on her negligence claims. Specifically, relying on *Butler-Rupp v. Lourdeaux* (2005) 134 Cal.App.4th 1220 and *Erlich v. Menezes* (1999) 21 Cal.4th 543 (*Erlich*), Drulias contends Wise was not entitled to emotional distress damages because "[t]here was no evidence that Long had assumed a duty to Wise in which her emotional tranquility was an object[,]" and because Long's conduct did not result in or create a risk of physical injury. Once again, we are not persuaded by Drulias's argument.

We begin our analysis by noting emotional distress damages are not always available in an action for negligence. (*Erlich, supra*, 21 Cal.4th at p. 554.) In general, "'unless the

19

defendant has assumed a duty to [the] plaintiff in which the emotional condition of the plaintiff is an object, recovery [of emotional distress damages] is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by [breach of the independent duty]. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.'" (*Id.* at p. 555.) "However, the limits imposed with respect to recovery for emotional distress caused by a defendant's negligence do not apply when distress is the result of a defendant's commission of the distinct torts of trespass, nuisance or conversion." (*Gonzalez v. Personal Storage, Inc.,* (1997) 56 Cal.App.4th 464, 475 (*Gonzalez*).) Therefore, even if a plaintiff may not recover emotional distress damages as part of a negligence claim, he or she may still recover those damages as part of a conversion claim. (*Id.* at p. 477 ["notwithstanding further developments in the law of negligence, damages for emotional distress growing out of a defendant's conversion of personal property are recoverable"].)

Applying these principles, here, the jury found in Wise's favor on her conversion claim, as well as her negligence claims. Although the general verdict form provided by the parties asked the jury to specify Wise's economic and noneconomic damages, both past and present, it did not ask the jury to apportion the damages awarded to Wise for each of the claims on which she prevailed. Nothing in the record reflects Long objected to the verdict form, or proposed an alternative form apportioning Wise's damages. Under these circumstances, and assuming the jury included emotional distress damages in its award of noneconomic damages for pain and suffering, we cannot conclude the jury

20

awarded those damages to Wise solely as part of her negligence claims. Therefore, because Wise prevailed on her conversion claim and could recover emotional distress damages on that claim (*Gonzalez, supra*, 56 Cal.App.4th at p. 477), we discern no error in the trial court's denial of Long's post-trial motions based on the propriety of Wise's damages.[6]

---

6      In his motion for JNOV, Long relied on Civil Code section 3336 and *Lint v. Chisholm* (1981) 121 Cal.App.3d 615 to assert "[e]motional distress damages are not included[ ]" on a conversion claim. We need not consider this argument because Drulias did not raise it in his appellate brief. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"].) In any event, even if the argument had been raised on appeal, we would have rejected it. The authorities cited by Long merely set forth the presumed measure of damages for conversion, and do not prohibit an award of emotional distress damages. (See Civ. Code, § 3336; see also *Lint v. Chisholm, supra*, at pp. 624-625.) Further, as discussed above, the *Gonzalez* court "conclude[d] that notwithstanding further developments in the law of negligence, damages for emotional distress growing out of a defendant's conversion of personal property are recoverable." (*Gonzalez, supra*, 56 Cal.App.4th at p. 477.)

## DISPOSITION

The judgment is affirmed. Appellant shall bear his own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.